# EXHIBIT A

September 12, 1995

Corporate Officers
*Greene-Broome Realty Company*
466 Broome Street
New York City, New York   10013

Dear Corporate Officers:

It is my intention to divest myself of all shares of stock in Greene-Broome Realty Company and in the property at 466 Broome Street, and I am offering it back to the Corporation.  I am willing to sell my shares back to the Corporation for $1.00.

In return, I will need a letter from the Corporation, accepting my offer, plus $1.00, plus an assignment of stock, including my original certificate or an assignment separate from the certificate, which would include the stock certificate number.

Sincerely,

Richard Brody

# EXHIBIT B

466 BROOME STREET OF NEW YORK CITY INC.
466 BROOME STREET
NEW YORK, NEW YORK    10013

SEPTEMBER 29, 1995

MR. RICHARD BRODY
27 ARBOR CIRCLE
NATICK, MASSACHUSETTS  01760

RE:   466 BROOME STREET OF NEW YORK CITY INC.
-------------------------------------------

Dear Richard:

In response to your letter dated September 13,1995 (copy annexed),
466 Broome Street of New York City Inc. hereby accepts your offer to
sell, transfer and assign all of your shares in the Corporation (which
owns the real property and building located at 466 Broome Street,
New York, New York) to the Corporation for the sume of One ($1.00)
Dollar.  You currently own 13.33333 shares of stock in the Corporation,
to wit:

10 shares evidenced by certificate No. 4
0.29 shares evidenced by certificate No. 8
0.29 shares evidenced by certificate No. 11
2.75333 shares evidenced by certificate No. 14

Accordingly, please sign the enclosed Stock Power whereby you sell,
transfer and assign the foregoing shares to the Corporation for the
Sum of $1.00, and return the executed Stock Power to me together with
the extra copy of this letter which you should sign where indicated
below.  Please date the Stock Power, and have your signature witnessed.
a check to your order for $1.00 is also enclosed.

Sincerely yours,

466 Broome Street of New York City Inc.

By: _Lorna J. Brody_
Lorna J. Brody

ACKNOWLEDGED AND AGREED:

_Richard Brody_
Richard Brody

MARTHA L. BOYD, Notary Public

# EXHIBIT C





NUMBER
**14**

2.75333

INCORPORATED UNDER THE LAWS OF THE STATE OF NEW YORK

## 466 BROOME STREET OF NEW YORK CITY INC.

The Corporation is authorized to issue 200 Common Shares without par value, of one class

This Certifies that RICHARD BRODY is the owner of 2.75333 fully paid and non-assessable Shares of the above Corporation transferable only on the books of the Corporation by the holder hereof in person or by duly authorized Attorney upon surrender of this Certificate properly endorsed.

In Witness Whereof, the said Corporation has caused this Certificate to be signed by its duly authorized officers and to be sealed with the Seal of the Corporation.

Dated January 2 1990

SECRETARY-TREASURER



INCORPORATED UNDER THE LAWS OF THE STATE OF NEW YORK

## 466 BROOME STREET OF NEW YORK CITY INC.

The Corporation is authorized to issue 200 Common Shares, without par value, of one class

This Certifies that RICHARD BRODY is the owner of Twenty Nine One Hundredths (29/100) of One Share non-assessable Shares of the above Corporation transferable only on the books of the Corporation by the holder hereof in person or by duly authorized Attorney upon surrender of this Certificate properly endorsed.

In Witness Whereof, the said Corporation has caused this Certificate to be signed by its duly authorized officers and to be sealed with the Seal of the Corporation.

Dated January 2, 1990

**EXHIBIT D**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-----------------------------------------------------------------X

In the Matter of the Application of

**ROBERT BRODY,**

Petitioner

For The Judicial Dissolution of

**466 BROOME STREET OF NEW YORK CITY, INC.**

Pursuant to B.C.L. §1104-a, et seq.

-----------------------------------------------------------------X

: Index No.:
:
:
:
:
:
:
:
:
:

06102077

*FILED*

*FEB 14 2006*

*COUNTY CLERKS O... NEW YORK*

**VERIFIED PETITION**

ROBERT BRODY, AS PETITIONER, respectfully sets forth, represents and alleges:

1.      Petitioner Robert Brody ("Petitioner") seeks the judicial dissolution of 466 Broome Street of New York City, Inc. (the "Corporation"), a closely held, family owned, New York Corporation with its principal office in New York County at 466 Broome Street, New York City, New York. Petitioner is the owner and holder of 36.11111 per cent of the issued and outstanding shares of the Corporation and is entitled to vote such shares for the election of directors of the Corporation. None of the shares of the corporation are listed on a national securities exchange or over the counter market and the Corporation is not a registered investment company.

2.      The Corporation, formed in 1981, is engaged in the business of owning and operating a valuable five (5) story building at 466 Broome Street in the heart of Soho (the "Building"). The Building consists of approximately 30,000 square feet of rentable space, including the Building's basement. The Building's basement and each full floor of the Building constitutes approximately 5,000 square feet of rentable space.

3.      Upon information and belief, the Building has a market value of in excess of

$15,000,000.00.

4.    An affiliate of the Corporation, UFO Contemporary, Inc. ("UFO"), and Petitioner and his wife and two children, occupy space in the Building, along with several unaffiliated commercial enterprises.

5.    UFO occupies approximately 18,500 square feet on multiple floors of the Building. Petitioner and his family occupy approximately 1,800 to 2,000 square feet on the third floor.

6.    Petitioner brings this Petition because the Purported Majority Shareholders[1] have threatened Petitioner and Petitioner's family with eviction from the Building unless Petitioner consents and acquiesces to acts and conduct by the Purported Majority Shareholders constituting corporate waste and intended by the Purported Majority Shareholders to personally benefit the Purported Majority Shareholders at the expense of Petitioner and the Corporation.

7.    Petitioner is also a personal guarantor of the Corporation's mortgage and credit line obligation to La Jolla Bank, FSB.

8.    Upon information and belief, the present outstanding Corporate mortgage and credit line obligations to La Jolla Bank, FSB with respect to which Petitioner has given his personal guaranty total $700,000.00.

9.    The Corporation's obligation to La Jolla Bank FSB is subject to increase, in the event that the Corporation draws down against the unused portion of the Corporation's credit line, which such unused portion is in the approximate amount of $500,000.00.

---

[1]

As defined in the accompanying Order To Show Cause.

Because of the conduct subject of this Petition, Petitioner's exposure to La Jolla Bank FSB rests solely with the Purported Majority Shareholders, who have recently and without proper reason acted to remove Petitioner from the Corporation's Board of Directors.

10.     Upon information and belief, the shares of the Corporation, each share of which is entitled to one vote, are held as follows:

| | |
|---|---|
| Robert Brody | 36.11111 |
| Lorna Brody | 36.11111 |
| Trust of Leo Brody | 27.77778 |

11.     Lorna Brody ("Lorna") is Petitioner's sister.

12.     Leo Brody is Petitioner's father. Leo Brody died in 1988.

13.     The Trust of Leo Brody is a trust created by the Will of Leo Brody. **A copy of the Will of Leo Brody is annexed hereto, made a part hereof, and marked Exhibit "A".**

14.     Pursuant to the Will of Leo Brody, and as pertains to the Corporation, Petitioner's sister, Lorna, and Petitioner's mother, Evelyn Brody ("Evelyn") are the trustees of a lifetime income trust for Evelyn denominated above, "Trust of Leo Brody".

15.     Upon Evelyn's death, Petitioner, Lorna, and Petitioner and Lorna's brother Richard, are one third (1/3) beneficiaries of the corporate shares now held in the name of "Trust of Leo Brody".

16.     Petitioner seeks the judicial dissolution of the Corporation pursuant to BCL Section 1104-a(a)(1).

17.     The illegal and oppressive acts and conduct of Purported Majority Shareholder Management, specifically, Lorna and Evelyn, individually, and as Trustees of the Trust of Leo Brody impair, and threaten to immediately and imminently impair the

value of the Corporation, the Building, Petitioner's vested and future interest in the Corporation and the Building, and the financial and personal health, safety and well being of Petitioner, his wife and two children.

## THE JANUARY 2006 SHAREHOLDER'S MEETING

18.    On or shortly after January 5, 2006, Petitioner received, upon signature of Evelyn , as Corporate Secretary, a "Notice of Annual Meeting of Shareholders To Be Held On January 17, 2006" (the "Notice"). **A copy of the Notice is annexed hereto, made a part hereof and marked Exhibit "B".**

19.    The Notice set forth the purpose of the meeting to be $a$) the election of directors; and $b$) the transaction of "other" properly presented business.

20.    Since, approximately, the death of Petitioner's father, the Corporate Board of Directors has consisted of Petitioner, Lorna, and Evelyn.

21.    To Petitioner's knowledge, and irrespective of the provisions of the Corporate By-Laws, no prior annual shareholders meeting had ever been held, or if one had previously been held, it was held more than 20 years ago.

22.    Upon information and belief in this closely held, family owned corporation, no prior formal election of a Board of Directors had ever occurred.

23.    Because of a long history of business disagreements with, in particular, Petitioner's sister Lorna, Petitioner, in a writing dated January 9, 2006, responded to the Notice, and requested from Evelyn a more particularized "agenda". **A copy of Petitioner's January 9, 2006 written request is annexed hereto, made a part hereof, and marked Exhibit "C".**

24.    Evelyn did not respond, but Lorna did. In this regard, of note is the fact that Evelyn is 87 years old, and, at best, physically, emotionally, and in terms of all matters pertaining to the Corporation, or its affiliate UFO, under the domination, exclusive influence, and control of Lorna.

25.    **A copy of Lorna's response is annexed hereto, made a part hereof, and marked Exhibit "D".**

26.    Lorna's response, devoid of detail, is telling nonetheless.

27.    Lorna advised, "Please feel free to bring an attorney to the meeting".

28.    Petitioner did.

29.    The Corporation, Evelyn and Lorna, were also represented by counsel at the meeting. Charles Rosenzweig, Esq. of Rand Rosenzweig Radley & Gordon ("Rosenzweig" or the "Rosenzweig Firm") appeared at the January 17, 2006 shareholder's meeting, although at that time, Rosenzweig refused to state on whose behalf he appeared.[2]

30.    Petitioner was not, however, at any time, for reasons subsequently made obvious, consulted with respect to the retention of the Rosenzweig Firm.

31.    In fact, as subsequently learned, the Rosenzweig Firm was retained "by the management of the Corporation with respect to claims which the Corporation may have against [Petitioner], as well as any claims asserted by [Petitioner] against the Corporation and the individuals acting on behalf of the Corporation." **See Rosenzweig letter to Petitioner's counsel dated, January 20, 2006, a copy of which is annexed**

---

[2]

Should the Rosenzweig Firm appear for any adverse party herein, Petitioner reserves the right to seek disqualification. Stephen Zeche, Esq., designated of counsel on the Rosenzweig Firm's letterhead, for many years has been the Corporation, UFO and family counsel. I have dealt with him in that capacity.



hereto, made a part hereof, and marked Exhibit "E".

32.    On January 17, 2006, and immediately prior to the commencement of the shareholder's meeting, Petitioner's counsel requested an adjournment of the meeting but the request was denied.

33.    At the January 17, 2006 meeting, Lorna, and Lorna and Evelyn as Trustees of the Trust of Leo Brody voted Petitioner off the Corporate Board of Directors.

34.    No reason was given.

35.    The shares held by the Trust of Leo Brody, together with the shares held by Petitioner, combined to constitute the plurality sufficient to vote Petitioner off the Board of Directors, irrespective of Petitioner's years of unblemished service to the the Corporation, and irrespective of, among other things, Petitioner's extant personal guaranty obligations to the La Jolla Bank, FSB, the extent of which such personal guaranty obligations are now in the sole and exclusive control of Evelyn and Lorna.

36.    In other words, shares held by the Trust of Leo Brody, with respect to which Petitioner has a one third beneficial interest, were voted by the Trust of Leo Brody (through Lorna and Evelyn) to vote Petitioner off the Board of which Petitoner had been a member for decades.

37.    Evelyn and Lorna to the exclusion of Petitioner are in complete control of the financial books and records of the Corporation.

38.    Plainly, this is a breach of the fiduciary duties of Lorna and Evelyn as Trustees to Petitioner.

39.    This breach of Lorna and Evelyn's fiduciary duties to Petitioner in their capacity as Trustees of a trust with respect to which Petitioner has a one third beneficial

interest, coupled with Lorna and Evelyn's breaches of duty as directors and majority shareholders of the Corporation, subjects each of them to a double fiduciary duty and a double liability to Petitioner.

40.   Petitioner's seat on the Board was awarded to an "Andrea Cohen", an individual whom Petitioner believes to be an acquaintance of Petitioner's sister, and whose sole qualification for the directorship is, upon information and belief, such relationship.

41.   Petitioner's request, made at the the January 17, 2006 meeting, for identification and qualifications of Andrea Cohen was, by Evelyn and Lorna, declined.

42.   In a letter dated January 27, 2006, Lorna and Evelyn's duplicitous, immoral and wasteful intent and purpose was expressed by Rosenzweig. **A copy of Rosenzweig's letter to Petitioner's counsel is annexed hereto, made a part hereof, and marked Exhibit "F".**

43.   Before directly addressing Exhibit F, brief, further background of the Corporation's affiliate UFO is required.

UFO

44.   Petitioner's father, Leo, and Petitioner in the late 1960's and the early 1970's together began doing business, and continuing a prosperous apparel business known as UFO.

45.   Over the years, UFO, in addition to conducting a lucrative wholesale apparel business, prospered through licensing of its brand name, "UFO".

46.   In connection with the business of UFO, Petitioner financially helped Leo make the purchase of the Building by providing approximately $40,000.00 of the approximately $155,000.00 cost of the Building.

-7-

47.    Initially, the Building was singularly a warehouse for the apparel goods and product of UFO but after the death of Petitioner's father and by 1992, it became apparent that the value of real estate in Soho was such that the Building could generate significant rental income. But the UFO apparel inventory had to be diposed of.

48.    Accordingly, and while Petitioner painstakingly and profitably liquidated floors of UFO apparel goods and product, stacked floor to ceiling, the Corporation began rental of the Building space to non affiliated tenants, but also to UFO.

49.    Petitioner and Lorna continued the business of UFO after the death of Petitioner's father.

50.    For Petitioner, and through to 2005, UFO was a full time job, requiring multiple national and international trips during the course of the year.

51.    In April of 2005, however, Petitioner resigned as an officer and Director of UFO.

52.    The reasons for Petitioner's resignation are expressed, in brief, in **Petitioner's letter of resignation dated April 19, 2005 and addressed to Evelyn, a copy of which is annexed hereto, made a part hereof, and marked Exhibit "G".**

53.    In pertinent part, Petitioner's letter of resignation from UFO, set forth "Since I have been stripped of all decision making authority and since it has been preordained that with the unequal distribution of shares, I will never have a say in the destiny of the Company, I have decided that it is no longer in my best interest to hold a position as an Officer or Director of the Company."

-8-

54. Evelyn's written acceptance of Petitioner's April 19, 2005 resignation, together with Petitioner's response thereto, is annexed hereto, made a part hereof, and marked Exhibit "H".

55. Petitioner retains a current nominal present minority ownership interest in UFO.

56. Evelyn, who in fact is dominated by Petitioner's sister Lorna, holds and controls the majority of the issued and outstanding shares of UFO. Upon information and belief, Evelyn has bequeathed her UFO shares to Lorna and this fact was known to Petitioner at the time Petitioner resigned from UFO.

57. Unlike the UFO ownership circumstances, and unlike the present economic value of UFO, the value of Petitioner's present and prospective share interest in the Corporation is significant.

58. Petitioner's removal from the Board of Directors of the Corporation of the closely held, family owned Corporation is facially oppressive.

59. But returning to Rosenzweig's January 27, 2006 letter, the true purpose of Petitioner's removal elevates Lorna and Evelyn's conduct from an appearance of oppression to actual and, in fact, maliciousness, self-dealing and venality.

## LORNA AND EVELYN'S THREAT OF EVICTION

60. Paragraphs 3 through 7 of Rosenzweig's January 27, 2006 letter plainly threaten Petitioner and Petitioner's family with eviction from Petitioner's residence at the Building unless Petitioner consents to the continued occupancy of UFO at the Building upon terms and conditions dictated by Lorna.

61.    The terms and conditions demanded benefit Lorna through her management control, and present and future equity control of UFO, to the exclusion of Petitioner, and in derogation of the economic interests of the Corporation.

62.    The eviction threat directed at Petitioner, his wife and two children, one of whom is a minor, and the other 18, is in and of itself oppressive and wrongful. Such threats by the Grandmother and Aunt of Petitioner's children can not be countenanced.

63.    The residency of Petitioner and his family at the Building since 1995 has at all times been fully known, disclosed and agreed to by the Corporation, Evelyn and Lorna.

64.    With Evelyn and Lorna's knowledge, Petitioner has invested in excess of $190,000.00 in Petitioner's family residence at the Building.

65.    In addition, Petitioner, through sweat equity, *i.e.* Petitioner's de facto status as on site superintendent, handyman and manager, has enhanced the prestige, value, attraction and appearance of the Building.

66.    UFO's lease at the Building will expire in the Fall of 2007. **A copy of UFO's current lease is annexed hereto, made a part hereof, and marked Exhibit "I".**

67.    UFO currently occupies approximately 18,500 square feet of the Building's 30,000 square feet of rentable space. UFO occupies the Building's basement, 800 square feet of first floor, the entirety of the second floor, 2700 square feet of the third floor, and the entirety of the fourth floor.

68.    Pursuant to the lease set to expire in the Fall of 2007, UFO pays the Corporation approximately $30,000.00 per annum in rent.

69.    **Annexed hereto, made a part hero and marked Exhibit "J" is a copy of the Corporations "rent roll" for the period January through December**

-10-

2004.

70.    For the period reported in the Exhibit I rent roll, the Buildings three non affiliated commercial tenants occupying less than 50% of the Building's rentable space account for $473,000.00 of the $503,000.00 annual rent roll.

71.    UFO's below market rent is patent.

72.    UFO currently pays the Corporation rent at a rate of approximately $1.50 per square foot for space rentable at between $25.00 and $35.00 per square foot.

73.    · In threatening Petitioner's eviction unless Lorna and Evelyn's demands are met, Evelyn and Lorna are forcing the migration of the current and future value of the Building to UFO, Evelyn and Lorna, to the Corporation and Petitioner's detriment to the extent of millions of dollars.

74.    This is waste and mismanagement by each of Evelyn and Lorna in their capacities as director's of the Corporation and trustees of the Trust of Leo Brody.

75.    Rosenzweig's January 27, 2006 letter at paragraph 4 provides, "The Corporation will have the right to extend the lease with UFO for up to an additional 15 years on approximately the same terms and conditions as is currently the case."

76.    Such a 15 year extension removes millions of dollars of future rent roll income from the Corporation, and through such below market long term lease provides economic control of the Building to UFO, Lorna and Evelyn, to the detriment of the Corporation and Petitioner.

77.    Such conduct, when coupled with Lorna and Evelyn's eviction threat, his venal, oppressive, and, if allowed, mismanagement and a waste of the assets and value of the Corporation and should be denied pending dissolution of the Corporation.

78.    The eviction threat, Petitioner's removal from the Board (while Petitioner's personal guaranty continues), and the divestiture of Petitioner's role in management of a Corporation with respect to which Petitioner has been intimately involved during Petitioner's deceased father's lifetime, and thereafter is reprehensible.

79.    No prior application for the relief requested herein has been made to this or any other Court.

WHEREFORE, PETITIONER, ROBERT BRODY, respectfully requests: *i*) that the accompanying Order To Show Cause be signed and on the return date; *ii*) that an Order be entered granting Petitioner's Application for the judicial dissolution of 466 Broome Street of New York City, Inc.; and *iii*) for such other, further and different relief as this Court may deem just and proper.

Respectfully submitted this 10th day of February, 2006.

_____
ROBERT BRODY, PETITIONER

LAZARUS & LAZARUS, P.C.
*Attorneys for Plaintiff* ROBERT BRODY

By: _____
HARLAN M. LAZARUS HML-0268
240 Madison Avenue, 8th Floor
New York, New York 10016
Tel. 212 889-7400

-12-

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---------------------------------------------------------------------X

In the Matter of the Application of          :    Index No.:
                                             :
          ROBERT BRODY,                      :
              Petitioner                     :    VERIFICATION
                                             :
For The Judicial Dissolution of              :
                                             :
  466 BROOME STREET OF NEW YORK CITY, INC.   :
                                             :
Pursuant to B.C.L. §1104-a, et seq.          :

---------------------------------------------------------------------X

ROBERT BRODY, being duly sworn, deposes and says:

I am the Petitioner named in the above captioned action and I have read the

foregoing Petition, and know the contents thereof; and the same is true to my own

knowledge, except as to the matters therein stated to be alleged upon information and

belief; and as to the matters I believe to be true.

_____
ROBERT BRODY, PETITIONER

Sworn to before me this 10ᵗʰ day of February, 2006

_____
          Notary Public

HARLAN M. LAZARUS
Notary Public, State of New York
No. 31-4723982
Qualified in New York County
Commission Expires February 28, 20___07

<u>WILL OF</u>

<u>LEO BRODY</u>

LANGBERG & RINGEL
111 Broadway
New York, N. Y.   10006
Tel.: (212) 349-0130

# LAST WILL AND TESTAMENT

## OF

## LEO BRODY

---

I, LEO BRODY, being of sound and disposing mind, memory and understanding, and mindful of the uncertainty of human life, do hereby make, publish and declare this to be my Last Will and Testament, hereby revoking any and all former wills heretofore made by me.

## ARTICLE FIRST

I direct that all my enforceable debts and funeral expenses be paid as soon after my death as may be practicable.

## ARTICLE SECOND

I direct that a suitable tombstone or monument be erected upon my grave in accordance with the tenets of my religious faith.

## ARTICLE THIRD

If arrangements have not been made during my lifetime, I direct my Executors to arrange for the perpetual care of my grave and the initial plantings

STEPHEN ZECHE, an attorney admitted to practice in the State of New York, hereby certifies that the annexed is a true and correct copy of the Will of Leo Brody which was admitted to probate by the Surrogate's Court of Nassau County on November 10, 1988.

_____
STEPHEN ZECHE

required in connection therewith and to pay to the cemetery wherein I am interred such sums as it may require for such care and plantings.

## ARTICLE FOURTH

If, at my death, I am the owner of premises 412 Foxdale Avenue, Oceanside, New York, together with all articles of furniture, rugs, household goods and all other fixtures and articles of personal property of every kind, nature and description therein being, situate and located, I hereby give, devise and bequeath the same to my wife, EVELYN BRODY; and if she predecease me or we die in or as the result of a common disaster, I give, devise and bequeath the same as follows:

(a)  All articles of furniture, rugs, household goods and all other fixtures and articles of personal property of every kind, nature and description being, situate and located in premises 412 Foxdale Avenue, Oceanside, New York, to my daughter LORNA BRODY, and if she predecease me to her issue in equal shares per stirpes, and in default thereof to those persons whom LORNA BRODY shall appoint by her Will, and in default thereof or if she die intestate to those persons who would be her heirs at law, next of kin and distributees if she then died intestate, unmarried and

a resident of the State of New York;

(b) Premises 412 Foxdale Avenue, Oceanside, New York, to LORNA BRODY and DALE MILLER, IN TRUST NEVER-THELESS, and they are hereby appointed Trustees for that purpose, to hold, manage, invest and reinvest the same, collect and receive the income therefrom and pay or apply all of the net income to LORNA BRODY as long as she may live, and upon her death or the sale of the said premises, whichever shall first occur, the said trust shall cease and terminate and the corpus be paid as follows:

(i) One-third (1/3) thereof to LORNA BRODY if she be alive and if she then be dead to her issue in equal shares per stirpes, and in default thereof to those persons whom LORNA BRODY shall appoint by her Will, and in default thereto or if she die intestate to those persons who would be her heirs at law, next of kin and distributees if she had then died intestate, unmarried and a resident of the State of New York;

(ii) One-Third (1/3) thereof to my son ROBERT BRODY, and if he then be dead to his issue in equal shares per stirpes, and in default thereof one-half (1/2) to LORNA BRODY if she be alive and if she then be dead to her issue in equal shares per stirpes, and in default thereof to those persons who would take the share of LORNA BRODY as in (b)(i) of this Article; and

one-half (1/2) thereof to my son RICHARD BRODY and if he then be dead to his issue in equal shares per stirpes, and in default thereof to LORNA BRODY if she be alive and if she then be dead to her issue in equal shares per stirpes, and in default thereof to those persons who would take the share of LORNA BRODY as in (b)(i) of this Article; and

    (iii) One-third (1/3) thereof to my son RICHARD BRODY, and if he then be dead to his issue in equal shares per stirpes, and in default thereof one-half (1/2) to LORNA BRODY if she be alive and if she then be dead to her issue in equal shares per stirpes, and in default thereof to those persons who would take the share of LORNA BRODY as in (b)(i) of this Article, and one-half (1/2) thereof to ROBERT BRODY and if he then be dead to his issue in equal shares per stirpes, and in default thereof to LORNA BRODY if she be alive and if she then be dead to her issue in equal shares per stirpes, and in default thereof to those persons who would take the share of LORNA BRODY as in (b)(i) of this Article.

    LORNA BRODY during her life shall pay all charges and expenses for the maintenance and opera-tion of the aforesaid real property, including but not

limited to taxes, insurance, water and sewer rates, repairs and all other charges of every kind, nature and description necessary to operate and maintain the premises in good order and condition.

## ARTICLE FIFTH

I hereby give, devise and bequeath to EVELYN BRODY and LORNA BRODY assets whose dollar value is equivalent to the dollar value of the Maximum Unified Credit applicable to my estate at the time of my death, IN TRUST NEVERTHELESS, and they are hereby appointed Trustees for that purpose, to hold, manage, invest and reinvest the same and collect and receive the income therefrom, and to pay or apply all of the net income during the term of the trust quarter-annually or at such more frequent intervals as she may reasonably direct to and for the use of EVELYN BRODY as long as she may live, and upon her death the trust shall cease and terminate and the corpus be paid as follows:

(a) That portion thereof as shall constitute shares of stock of U F O Contemporary, Inc. and U F O International, Inc. and shares of stock of any corporation engaged in the business of the manufacture or sale or distribution of apparel or as a jobber or

-5-

thereof or my interest in such or similar business as owner in whole or in part or as a partner or joint venturer thereof or therein or otherwise:

(i) Thirty-seven and one-half percent (37-1/2%) thereof to LORNA BRODY and if she then be dead to her issue in equal shares per stirpes, and in default thereof to those persons whom LORNA BRODY shall appoint by her Will, and in default thereof or if she die intestate to those persons who would be her heirs at law, next of kin and distributees if she had then died, intestate, unmarried and a resident of the State of New York.

(ii) Thirty-seven and one-half percent (37-1/2%) thereof to ROBERT BRODY and if he then be dead to his issue in equal shares per stirpes, and in default thereof, one-half (1/2) to LORNA BRODY, and if she then be dead to her issue in equal shares per stirpes, and in default thereof to those persons who would take the share of LORNA BRODY as in (a)(i) of this Article, and one-half (1/2) shall be added to the trust created for the benefit of RICHARD BRODY pursuant to (a)(iii) of this Article and shall follow the disposition of principal and income as therein set forth, and if he then be dead to his issue in equal shares per

-6-

stirpes and in default thereof to LORNA BRODY, and if she then be dead to those persons who would take the share of LORNA BRODY as in (a)(i) of this Article.

(iii) Twenty-five percent (25%) thereof to LORNA BRODY and ROBERT BRODY, IN TRUST NEVERTHELESS, and they are hereby appointed Trustees for that purpose, to hold, manage, invest and reinvest the same, collect and receive the income therefrom and to pay all of the net income quarter-annually or at such more frequent intervals as he may reasonably direct to and for the use of RICHARD BRODY as long as he may live, and upon his death the said trust shall cease and terminate and the corpus shall be paid to his issue in equal shares per stirpes, and in default thereof the same shall be paid one-half (1/2) to LORNA BRODY and if she then be dead to her issue in equal shares per stirpes, and in default thereof to those persons who would take the share of LORNA BRODY as in (a)(i) of this Article; and one-half (1/2) thereof to ROBERT BRODY, and if he then be dead to his issue in equal shares per stirpes, and in default thereof to LORNA BRODY, and if she then be dead to those persons who would take the share of LORNA BRODY as in (a)(i) of this Article.

(iv) All bequests to RICHARD BRODY



-7-

that may be payable pursuant to (a) of this Article FIFTH
in the contingencies therein set forth shall be added to
the trust created for his benefit pursuant to (a)(iii)
thereof.

    (b)  The balance of the corpus except for
cooperative apartment known and designated as B in prem-
ises 244 Madison Avenue, New York, New York, and the
shares of stock of 244 Madison Realty Corp., a coopera-
tive corporation, applicable to said apartment, shall
be paid as follows:

    (i) One-third (1/3) thereof to LORNA
BRODY, and if she then be dead to her issue in equal
shares per stirpes, and in default thereof to those
persons who would take the share of LORNA BRODY as in
(a)(i) of this Article.

    (ii) One-third (1/3) thereof to
ROBERT BRODY, and if he then be dead to his issue in
equal shares per stirpes, and in default thereof to
LORNA BRODY, and if she then be dead, to her issue in
equal shares per stirpes, and in default thereof to
those persons who would take the share of LORNA BRODY
as in (a)(i) of this Article; and one-half (1/2) thereof
to RICHARD BRODY, and if he then be dead to his issue
in equal shares per stirpes, and in default thereof to

LORNA BRODY, and if she then be dead to her issue in equal shares per stirpes, and in default thereof to those persons who would take the share of LORNA BRODY as in (a)(i) of this Article.

(iii) One-third (1/3) thereof to RICHARD BRODY, and if he then be dead to his issue in equal shares per stirpes, and in default thereof one-half (1/2) thereof to LORNA BRODY, and if she then be dead to her issue in equal shares per stirpes, and in default thereof to those persons who would take the share of LORNA BRODY as in (a)(i) of this Article; and one-half (1/2) thereof to ROBERT BRODY, and if he then be dead to his issue in equal shares per stirpes, and in default thereof to LORNA BRODY and if she then be dead to her issue in equal shares per stirpes, and in default thereof to those persons who would take the share of LORNA BRODY as in (a)(i) of this Article.

My Trustees are authorized to invade the corpus of the trust for the benefit of EVELYN BRODY in such amounts and from time to time as they, in their sole discretion, may see fit, having due regard to her assets and income from all other sources.

My Trustees may invade the corpus of the trust for the benefit of RICHARD BRODY in such amounts

-9-

and from time to time as they, in their sole discretion, may see fit, including the payment to him of the entire corpus of the trust, but the extent, frequency or failure of invasion shall not be subject to question or criticism by any Court nor may any Court direct the invasion as the same is in the sole, absolute and arbitrary discretion of my said Trustees.

## ARTICLE SIXTH

(a) I hereby acknowledge that LORNA BRODY is the owner of all articles of furniture, rugs, household goods and all other fixtures and articles of personal property of every kind, nature and description being, situate and located in cooperative apartment B in premises 244 Madison Avenue, New York, NY.

(b) I hereby give, devise and bequeath the Proprietary Lease for Apartment B in premises 244 Madison Avenue, New York, NY, and the shares of stock of 244 Madison Realty Corp. applicable to said Apartment to LORNA BRODY and DALE MILLER, IN TRUST NEVERTHELESS, and they are hereby appointed Trustees for that purpose, to hold, manage, invest and reinvest the same, collect and receive the income therefrom and pay or apply all of the net income to LORNA BRODY as long as she may live, and upon her death the said trust shall

-10-

cease and terminate and the corpus paid as follows:

(i) One-third (1/3) thereof to the issue of LORNA BRODY and in default thereof to those persons whom LORNA BRODY shall appoint by her Will, and in default thereof or if she died intestate to those persons who would be her heirs at law, next of kin and distributees had she died intestate, unmarried, and a resident of the State of New York;

(ii) One-third (1/3) thereof to my son ROBERT BRODY, and if he then be dead to his issue in equal shares per stirpes, and in default thereof one-half (1/2) to those persons who would take the share of LORNA BRODY as in (b)(i) of this Article, and one-half (1/2) thereof to my son RICHARD BRODY and if he then be dead to his issue in equal shares per stirpes, and in default thereof to those persons who would take the share of LORNA BRODY as in (b)(i) of this Article; and

(iii) One-third (1/3) thereof to RICHARD BRODY, and if he then be dead to his issue in equal shares per stirpes, and in default thereof one-half (1/2) to those persons who whould take the share of LORNA BRODY as in (b)(i) of this Article, and one-half (1/2) thereof to ROBERT BRODY and if he then be dead to

-11-

his issue in equal shares per stirpes, and in default thereof to those persons who would take the share of LORNA BRODY as in (b)(i) of this Article.

LORNA BRODY during her life shall pay all maintenance charges, rentals, assessments and all other expenses applicable to the said Proprietary Lease and the aforesaid shares and shall maintain and keep in good order and repair the said cooperative apartment.

On written request of LORNA BRODY, my Trustees shall sell the Proprietary Lease and the shares applicable thereto, in which event the trust shall cease and terminate and the said corpus shall be paid to LORNA BRODY, ROBERT BRODY and RICHARD BRODY in equal shares, and if any thereof shall then be dead the share applicable to the deceased shall be paid as in (b) (i) or (ii) or (iii) of this Article SIXTH set forth, whichever is applicable to the deceased.

(c) I hereby acknowledge that LORNA BRODY is the owner of all furniture, rugs, household goods and fixtures and all other personal property of every kind, nature and description, including but not limited to paintings, if any, jewelry, if any, and personal effects, if any, in Apartment B in the aforesaid premises.

-12-

## ARTICLE SEVENTH

All the rest, residue and remainder of my property of every kind, nature and description of which I may die seized or possessed or to which I may be entitled at the time of my death, I hereby give, devise and bequeath to EVELYN BRODY, and if she shall predecease me I hereby give, devise and bequeath the same as follows:

(a) If any portion thereof shall constitute shares of stock of U F O CONTEMPORARY INC. and U F O INTERNATIONAL INC. and shares of stock of any corporation engaged in the business of the manufacture or sale or distribution of apparel or as a jobber or retailer thereof, or an interest in such business as owner thereof in whole or in part or as a partner therein or joint venture or joint venturor thereof or otherwise shall be paid and disposed of as in ARTICLE FIFTH (a)(i), (ii) and (iii) thereof set forth.

(b) One-third (1/3) of the balance thereof to LORNA BRODY, and if she then be dead to her issue in equal shares per stirpes; and in default thereof the same shall be paid as in ARTICLE SIXTH (b)(i) set forth.

(c) One-third (1/3) of the balance thereof to ROBERT BRODY, and if he then be dead to his issue in equal shares per stirpes, and in default thereof, one-

-13-

half (1/2) thereof to my daughter LORNA BRODY, and if
she then be dead to her issue in equal shares per stirpes,
and in default thereof the same shall be paid as in
ARTICLE SIXTH (b)(i) set forth, and one-half (1/2)
thereof to RICHARD BRODY, and if he then be dead to his
issue in equal shares per stirpes, and in default thereof
to LORNA BRODY, and if she then be dead the same shall
be paid as in ARTICLE SIXTH (b)(i) set forth.

(d) One-third (1/3) of the balance thereof to
RICHARD BRODY and if he then be dead to his issue in
equal shares per stirpes, and in default thereof one-
half (1/2) thereof to LORNA BRODY, and if she then be
dead the same shall be paid as in ARTICLE SIXTH (b)(i)
set forth, and one-half (1/2) thereof to ROBERT BRODY
and if he then be dead to his issue in equal shares per
stirpes, and in default thereof to LORNA BRODY, and if
she then be dead the same shall be paid as in ARTICLE
SIXTH (b)(i) set forth.

## ARTICLE EIGHTH

Anything herein contained to the contrary not-
withstanding, if any beneficiary of my estate at the time
for the payment to him or her of any portion of my estate
in any of the contingencies as in this Will provided
has not yet attained the age of twenty-five (25) years,

-14-