I hereby direct that the share payable to such benefici-
ary not yet then twenty-five (25) years of age be paid,
if the beneficiary be issue of LORNA BRODY, to his or
her parent and ROBERT BRODY, and if the beneficiary be
issue of RICHARD BRODY to his or her parent and LORNA
BRODY and ROBERT BRODY, and if the beneficiary be issue
of ROBERT BRODY to his or her parent and LORNA BRODY,
IN TRUST NEVERTHELESS, to hold, manage, invest and
reinvest the same, collect and receive the income
therefrom, and apply so much of the net income and
principal thereof necessary for the support, education
and maintenance of said beneficiary as my said Trustees
shall see fit, and to accumulate, invest and reinvest
the balance of said income until said beneficiary shall
attain the age of twenty-five (25) years, and upon his
or her attainment of the age of twenty-five (25) years,
the said trust shall cease and terminate and the then
corpus, together with any accumulated and undistributed
income, shall be paid to said beneficiary, and if he or
she shall die prior to attaining the age of twenty-five
(25) years, the same shall be paid to his or her issue
in equal shares per stirpes, and in default thereof to
his or her sisters and brothers who shall be my descend-
ants, in equal shares per stirpes, and in default thereof
to my other descendants in equal shares per stirpes.

-15-

## ARTICLE NINTH

(a) If LORNA BRODY shall die, renounce, fail to qualify or fail to act as Trustee of the trust created pursuant to the provisions of ARTICLE FIFTH for the benefit of EVELYN BRODY, I hereby nominate and appoint ROBERT BRODY as Trustee in her place and stead, and if he should die, renounce, fail to qualify or fail to act for any reason whatever, I nominate and appoint RICHARD BRODY in his place and stead.

(b) If ROBERT BRODY or LORNA BRODY shall die, renounce, fail to qualify or fail to act as Trustee of any trust that may be created pursuant to ARTICLE EIGHTH hereof, I nominate and appoint RICHARD BRODY in his or her place and stead.

(c) I hereby direct that no bond be required of any Trustee named in this Will for the faithful performance of his or her duties as such in the State of New York or elsewhere.

## ARTICLE TENTH

If EVELYN BRODY and I shall die in or as a result of a common disaster, I hereby direct that she shall be deemed to have survived me and I predeceased her.

-16-

### ARTICLE ELEVENTH

My Executors and Trustees may make payment of income or principal applicable to the use of a minor under any provision of this my Will in any or all of the following ways:

(a) by paying the same to the parent, guardian or other person having the care and control of such minor;

(b) by paying directly to the minor such sums as they may deem advisable as an allowance;

(c) by expending it in such other manner as they in their discretion believe will benefit such minor, including without limitation the preservation and protection of any articles of personal property held for a minor.

Any payment or distribution authorized in this ARTICLE ELEVENTH shall be a full discharge to my Executors and Trustees with respect thereto.

### ARTICLE TWELFTH

In addition to such powers as they may have by law, I further authorize and empower my Executors and Trustees with respect to any and all property at any time constituting part of my estate, in their

-17-

discretion, to retain such property for as long as they may deem advisable; to sell the same at public or private sale, for cash or credit; to borrow money and to pledge or mortgage such property as security therefor; to lease real property regardless of the fact that the term of any lease may extend beyond the period of administration of my estate or the period permitted by law; to invest and reinvest in any property without being limited to the class of securities authorized for the investment of trust funds by Executors and Trustees; to make division and distribution in kind or money or part kind and part money, and for such purpose to determine the value thereof to the extent permitted by law; all stock dividends, splits and other stock distributions, and all liquidating dividends and distributions, shall be deemed principal, and all cash dividends and distributions except liquidating dividends and distributions shall be deemed income; my Executors (including any substitute or successor Executor) shall have the continuing power to deal with any property, real or personal, held in my estate as freely as I might in the handling of my own affairs; such powers may be exercised independently and without prior or subsequent approval of any court of judicial authority, and no person dealing with my Executors shall be required to

-18-

inquire into the propriety of their actions; to employ attorneys, accountants, depositories, proxies and such agents as they may deem advisable and to pay reasonable compensation for such services; make such elections under the tax laws applicable to my estate as they may deem desirable; to sell or exercise any "rights" issued on any securities held in my estate; charge or credit to corpus any premiums or discounts on securities purchased at more or less than par; vote in person or by proxy any stock or securities held, and grant such proxies and powers of attorney to such person or persons as they deem proper; consent to and participate in any plan for the liquidation, reorganization, consolidation or merger of any corporation or enterprise or any security of which or interest in which is held in my estate; to make repairs, replacements and improvemtns, structural or otherwise, to any real estate; subdivide real estate and dedicate it to public use and grant easements as they may deem proper, and if, at my death, I am engaged in any business undertaking either upon my sole account or as a partner or in any other capacity, they may, insofar as it may be possible to do so, continue my interest in such enterprise upon such terms and conditions as they deem in the best interests of my estate, regardless of any law, custom or practice to the contrary; and,

-19-

generally, to do all such acts and take all such proceed-ings with respect to such property as if they were the absolute owners thereof.  Any authority, discretion or power conferred upon my Executors and Trustees in this Will may be exercised by such of them as shall qualify and be acting hereunder from time to time and by the survivor or survivors and successor or successors of them.

### ARTICLE THIRTEENTH

(a) I hereby nominate and appoint EVELYN BRODY Executrix of this my Last Will and Testament and if she shall die, renounce, fail to qualify or fail to act for any reason whatever, I nominate and appoint LORNA BRODY, ROBERT BRODY and RICHARD BRODY as Executors in her place and stead.

(b) I direct that no bond be required of any Executor or Executrix named in this my Will for the faithful performance of his or her duties as such in the State of New York or elsewhere.

IN WITNESS WHEREOF, I hereunto set my hand

and subscribe my name and affix my seal this 13th  day

of   May      , 1987.

_____
LEO BRODY


      The foregoing instrument was subscribed by
the above-named Testator, on the 13th  day of
    May  , 1987, in our presence and was at
the same time and place published and declared
by him to us to be his Last Will and Testament,
and thereupon, we, at his request and in his
presence and in the presence of each other,
subscribe our names as attesting witnesses,
this attestation clause first having been read
aloud to us in the presence of said Testator.

_____ residing at 37 West 125,
               New York NY 10017

_____ residing at 9437 Shore Road
               Brooklyn, N.Y 11209

STATE OF NEW YORK    )
                       )   ss.:
COUNTY OF NEW YORK  )

      GEORGE LANGBERG, residing at 37 West 12th Street, New York, New York, and NATHAN RINGEL, residing at 9437 Shore Road, Brooklyn, New York, individually and severally being duly sworn, depose and say:

      The within Will was subscribed in our presence and sight at the end thereof by LEO BRODY on the 13th day of May , 1987, at 111 Broadway, New York, New York 10006.

      LEO BRODY,       at the time of making such subscription, declared the instrument so subscribed to be his Last Will and Testament.

      Each of your deponents thereupon signed his name as a witness at the end of the said Will at the request of said LEO BRODY,     and in his presence and sight and in the presence and sight of each other.

      LEO BRODY,     at the time of execution of sais Will was approximately 63 years of age and in the

respective opinions of the undersigned was of sound mind,
memory and understanding and not under any restraint or
in any respect incompetent to make a Will.

Said        LEO BRODY         , in the respec-
tive opinions of your deponents, could read, write and
converse in the English language and was suffering from
no defect of sight, hearing or speech or from any other
physical or mental impairment which would affect his
capacity to make a valid Will.  The Will was executed as
a single, original instrument and was not executed in
counterparts.

Each of your deponents was acquainted with
said    LEO BRODY          at such time and makes
this affidavit at his request.  George Langberg was
acquainted with said  LEO BRODY          for about
40  years and Nathan Ringel was acquainted with him
for about    40    years.

GEORGE LANGBERG, an attorney at law, duly
licensed to practice as such in the State of New York,
supervised the execution of the said instrument in

-2-

accordance with the statutory requirements of the Estates,

Powers & Trust Law.

_____
GEORGE LANGBERG

_____
NATHAN RINGEL

Sworn to before me this

13th day of May, 1987.

_____
Notary Public

GRACE S. LANGBERG
Notary Public, State of New York
No. 31-2268210
Qualified in New York County
Commission Expires March 30, 1987

-3-

466 BROOME STREET OF
NEW YORK CITY INC.

NOTICE OF ANNUAL MEETING OF SHAREHOLDERS
TO BE HELD ON JANUARY 17, 2006

The Annual Meeting of Shareholders of 466 Broome Street of New York City Inc. will be held at
11:00 a.m., on Tuesday, January 17, 2006, at 466 Broome Street, Second Floor conference room,
New York, New York 10013, to consider and take action upon the following matters:

1.    To elect directors; and

2.    To transact such other business as may properly come before the meeting or any
      adjournment(s) thereof.


*Evelyn Brody*

Evelyn Brody
Corporate Secretary


January 5, 2006

*1/5 Talked to Evelyn on phone*
*~~and at~~ at first said she, LornA + I*
*would be At meeting. then said she*
*did not Know who would be there when*
*I asked if there would be A lawyer*

January 9, 2006


Ms. Evelyn Brody
Corporate Secretary
466 Broome Street  New York City, Inc.
New York, NY 10013

Dear Evelyn:

Since this is the first meeting of 466 Broome Street in 18 years or maybe ever, I am
curious as to its purpose.  Please provide me the agenda and a list of who will be
attending.  As this meeting is inconsistent with how we have always operated, I am
concerned that there is some ulterior motive.

Specifically, I want to know if there will be any lawyers present or if any lawyers have
been hired to advise you or any other shareholder of the Company in preparation for this
meeting.  I reserve the right to be represented at the meeting.


Robert Brody

466 BROOME STREET OF NEW YORK CITY
466 BROOME STREET
N.Y.C., N.Y.   10013


JANUARY 12,2006

DEAR ROBERT,                    I AM RESPONDING TO YOUR LETTER DATED
JANUARY 9,2006.

THE AGENDA FOR THE ANNUAL MEETING IS SET
FORTH IN THE NOTICE DATED JANUARY 5,2006.

PLEASE FEEL FREE TO BRING AN ATTORNEY TO THE
MEETING.


*Lorna J Brody*

LORNA J. BRODY

# RAND ROSENZWEIG RADLEY & GORDON LLP

BERNARD S. GORDON
E. COOKE RAND
CHARLES L. ROSENZWEIG

CATHERINE S. CAMPBELL
MICHELE L. KUGLER

PHILIPPE D. RADLEY
HOWARD M. LANDA
STEPHEN IECHE
    COUNSEL

Writer's extension: 202
Writer's email address:
crosenzweig@randrose.com

ATTORNEYS AT LAW

50 MAIN STREET

WHITE PLAINS, N.Y. 10606

TELEPHONE: (914) 406-7000

FACSIMILE: (914) 406-7010

NEW YORK CITY OFFICE
600 THIRD AVENUE
NEW YORK, NY 10022
TELEPHONE: (212) 687-7070
FACSIMILE: (212) 557-1475

PARIS OFFICE:
43 AVENUE MONTAIGNE
PARIS, FRANCE 75008
TELEPHONE: (1) 47.23.64.82

CHARLES G.S. CAMPBELL
RESIDENT COUNSEL

January 20, 2006

VIA FACSIMILE AND MAIL
Harlan M. Lazarus, Esq.
Lazarus & Lazarus, P.C.
240 Madison Avenue
New York, New York 10016

Re: 466 Broome Street of New York City, Inc.

Dear Harlan;

I have already discussed with you the substance of your letter dated January 18, 2006. Contrary to your assertion, the annual meeting of shareholders held on January 17, 2006 was entirely legal and proper. The meeting was duly noticed and attended by all the shareholders of the 466 Broome Street of New York City, Inc. (the "Corporation"). You have not indicated any basis for your claim of illegality.

You have asked me for a copy of the tape or a transcript of the meeting. As I indicated to you, I have the tape in my possession. You agreed with me that we need not furnish you with the tape or a transcription of the tape at this time. Rather, before we incur the cost of sending the tape for copying or transcription, we have agreed to allow negotiations with a view of settling the disputes.

We will furnish you with the document pursuant to which the Trust voted its shares in the Corporation. However, you said there was no urgency to this request.

Finally, please be advised that we have been retained by the management of the Corporation with respect to claims which the Corporation may have against your client, Robert Brody, as well as any claims asserted by Mr. Brody against the Corporation and the individuals acting on behalf of the Corporation.

As discussed, we will provide you with a list next week, of matters that we think need to be addressed between Mr. Brody and the current management of the

RAND ROSENZWEIG RADLEY & GORDON LLP

Lazarus & Lazarus, P.C.
January 20, 2006
Page 2


Corporation. Without prejudice but in order to encourage settlement of the various disputes, for at least today and next week, the officers of the Corporation will continue to pay Mr. Brody his salary and will not make any efforts to evict him. In turn we ask that Mr. Brody not interfere with the management of the Corporation and its premises. Such cooperation would allow the negotiations to proceed in good order.


Very truly yours,

Charles L. Rosenzweig


CLR:nk

cc: Stephen Zeche, Esq.
    Ms. Lorna Brody

# Rand Rosenzweig Radley & Gordon LLP

BERNARD S. GORDON
E. COOKE RAND
CHARLES L. ROSENZWEIG

CATHERINE S. CAMPBELL
MICHELE L. KUGLER

PHILIPPE D. RADLEY
HOWARD M. LANDA
STEPHEN ZECHE
    COUNSEL

Writer's Extension:202
Writer's E-Mail Address:
crosenzweig@randrose.com

**ATTORNEYS AT LAW**

**50 Main Street**

**White Plains, N.Y. 10606**

**Telephone: (914) 406-7000**

**Facsimile: (914) 406-7010**

NEW YORK OFFICE
800 THIRD AVNUE
NEW YORK, NY 10022
TELEPHONE: (212) 687-7070
FACSIMILE: (212) 557-1475

PARIS OFFICE:
45 AVENUE MONTAIGNE
PARIS, FRANCE 75008
TELEPHONE: (1) 47.23.54.82

CHARLES G.G. CAMPBELL
RESIDENT COUNSEL

January 27, 2006

VIA EMAIL

Harlan M. Lazarus, Esq.
Lazarus & Lazarus
240 Madison Avenue
New York, NY 10016

Re: <u>466 Broome Street of New York City Inc. (the "Corporation")</u>

Dear Harlan:

You have requested that we provide you with a proposal to resolve the disputes between your client, Robert Brody ("Bob"), on the one hand, and the Corporation, Evelyn and Lorna Brody, as the majority shareholders, directors and officers of the Corporation, and as applicable, UFO, on the other hand. Without prejudice and for settlement purposes only, we make the following proposals.

1.    Bob agrees that the Evelyn and Lorna will manage the Corporation and UFO and that Bob will not seek to assert any control, or interfere in any management of the Corporation or UFO, except in the role of shareholder of the Corporation or UFO. Without limiting the foregoing, Bob must not deal with any vendor, tenant, supplier, employee, broker, customer or contractor of UFO or the Corporation, without the prior written consent of Lorna. We do not believe that this is a legitimate issue of contention, as Bob resigned as officer and director of UFO in April 2005, and the shareholders and directors of the Corporation have replaced Bob as a director and officer, respectively, earlier this month. I sent you by mail yesterday the public records you requested, certifying and confirming that Evelyn and Lorna are the trustees under the Will of Leo Brody and, accordingly, that the directors were elected by majority vote.

2.    Bob shall cooperate in advising all third parties and governmental institutions, including the post office, of the foregoing, and direct all communications to Lorna or her designees. All keys and masters to the Corporation's and UFO's premises shall

**Rand Rosenzweig Radley & Gordon LLP**

Harlan N. Lazarus, Esq.
January 27, 2006
Page 2

be delivered to Lorna or her designees, except those for Bob's apartment. Again this should not be an issue as it follows from the previous paragraph.

3.  Provided Bob is not in default of any obligations to Evelyn, Lorna, the Corporation or UFO, the Corporation will allow Bob to remain in possession of his apartment, on a month to month basis, without payment of use and occupancy, until the earlier of (i) UFO's vacating more than 2/3 of its existing premises.or (ii) the Corporation entering into a lease with UFO at no less than 80% of fair rental value, as established by the Corporation's good faith reliance on the estimate of a licensed real estate broker experienced in light industrial leasing of space in Manhattan (it being understood that a 20% discount is reasonable in order to avoid a vacant space and the costs of re-letting). The Corporation or UFO will pay for the electric service and trash pickup at Bob's apartment. Nothing herein shall constitute any warranty by the Corporation or its management that the premises may be used for a residence, and Bob assumes all risks and costs associated with any lack of government approvals allowing Bob to remain in his apartment. So long as Bob is in possession of his apartment, he shall not object to the payment of rent by the UFO on account of Lorna's apartment.

4.  The Corporation will have the right to extend the lease with UFO for up to an additional 15 years on approximately the same terms and conditions as is currently the case.

5.  The Corporation pays Bob an amount, by way of distribution.or salary, no less than the amounts currently payable to him, except that if funds are not available, the amount paid to him may be reduced, so long as he is treated in the same way as the Corporation treats Lorna.

6.  Bob approves the continuation of the current arrangement as between UFO and the Corporation concerning the allocation of costs and work at 466 Broome Street.

7.  Bob acknowledges that the Corporation is authorized to pay or credit UFO a fee of approximately $90,000 as a vacating fee for the 5th Floor, in accordance with past practice.

Nothing herein shall.be deemed an offer binding on Evelyn, Lorna, the Corporation or UFO. Any agreement concerning the foregoing shall be final and binding only when reduced to a formal, written agreement or agreements signed by all of the applicable parties.

The Corporation is continuing this week, as a sign of good faith, the salary for Bob. In return, we expect, by no later than February 1, 2006 the following:

**Rand Rosenzweig Radley & Gordon LLP**

Harlan N. Lazarus, Esq.
January 27, 2006
Page 3

     a.    All keys to the building and tenants' premises and all masters to be turned over to Lorna.

     b.    Bob shall provide us with proof that he has directed the post office to deliver all mail addressed to UFO, the Corporation, Lorna or Evelyn to the offices of the Corporation.

     c.    Bob shall advise all contractors and tenants that he is no longer authorized to act on behalf of the Corporation and that all communications shall be made to Lorna or her designee.

Very truly yours,

Charles L. Rosenzweig

Cc:    Ms. Lorna Brody
       Stephen Zeche, Esq.

April 19, 2005

Dear Mother:

As you are aware, I have been agonizing over the past several months about what role there was for me to play in the management of UFO.

Since I have been stripped of all decision making authority and since it has been preordained that with the unequal distribution of your shares, I will never have a say in the destiny of the Company, I have decided that it is no longer in my best interest to hold a position as an Officer or Director of the Company.

Please accept this as my resignation as an Officer and Director of UFO.

As you, no doubt, are aware, in my capacity as Officer, I have been working for the Company without salary or compensation of any kind.

Effective today, I will expect to receive a salary of $1,500 per week, plus benefits for my efforts.

Should you wish me to no longer be a presence at UFO, please advise me of your decision.

In any event, I would remind you that I am owed substantial dollars by the Company and would expect this money be paid to me within 30 days.

Furthermore, be advised that it is my intent to inform Valley National Bank that I am no longer an Officer or Director of the Company and I am withdrawing my guarantee of UFO's obligation.

I believe you have removed me from the checking account already, although you failed to give me the courtesy of informing me directly. If this information is not correct, I would request you take the necessary steps to do so now.

I would remind you that I am a stockholder of the Company and as such, have the expectation that your management of the Company will be in compliance with your duty to maximize profits. I would hope corporate assets will no longer be used as a personal piggy bank for those in control.

Finally, in light of the foregoing, I think it inevitable that my tenure with the Company will be short lived. It is therefore in everyone's best interest that we plan a strategy which will put our best foot forward to the employees, the customers and the suppliers of UFO. Should you choose to do so, I am available to discuss the best way to disclose information about my resignation and/or leaving the Company and a reasonable time frame.

Very truly yours,

Robert Brody

Cc:    Lorna Brody

**FedEx** · USA Airbill
Express

FedEx Tracking Number  8382 9062 7984

Senders Copy

**1 From** Please print and press hard

Date 04/19/05  Sender's FedEx Account Number  0100-6298-5

Sender's Name  R Brody   Phone 212  226-5490

Company  U F O CONTEMPORARY INC

Address  56 GREENE ST

City  NEW YORK   State NY  Zip 10012

**2 Your Internal Billing Reference**   OPTIONAL

**3 To**

Recipient's Name  Lorna Brody   Phone (    )

Company

Address  320 E 46th St · Apt 29 A

Address

City  NY   State NY  ZIP 100 1A

Try online shipping at fedex.com

By using this Airbill you agree to the service conditions on the back of this Airbill and in our current Service Guide, including terms that limit our liability.

Questions? Visit our Web site at fedex.com
or call 1.800.Go.FedEx® 800.463.3339.

0238661343

**4a Express Package Service**   Packages up to 150 lbs.

☑ FedEx Priority Overnight   ☐ FedEx Standard Overnight   ☐ FedEx First Overnight

☐ FedEx 2Day   ☐ FedEx Express Saver

**4b Express Freight Service**   Packages over 150 lbs.

☐ FedEx 1Day Freight*   ☐ FedEx 2Day Freight   ☐ FedEx 3Day Freight

**5 Packaging**

☑ FedEx Envelope*   ☐ FedEx Pak*   ☐ Other

**6 Special Handling**

☐ SATURDAY Delivery   ☐ HOLD Weekday   ☐ HOLD Saturday

Does this shipment contain dangerous goods?

☐ No   ☐ Yes   ☐ Yes   ☐ Dry Ice   ☐ Cargo Aircraft Only

**7 Payment** Bill to:

☐ Sender   ☐ Recipient   ☐ Third Party   ☐ Credit Card   ☐ Cash/Check

Total Packages   Total Weight   Total Declared Value

$ .00

**8 Release Signature** Sign to authorize delivery without obtaining signature.

447

**UFO**®

**UFO CONTEMPORARY, INC.**

**OFFICE:**
466 Broome Street
New York, N.Y. 10013
Tel: (212) 226-5400
Fax: (212) 219-8928

**SHOWROOM:**
1466 Broadway
Suite 403
New York, N.Y. 10036
Tel: (212) 575-0663
Fax: (212) 575-0745

April 25,2005  www.ufojeans.com

Robert Brody
466 Broome Street
N.Y.,N.Y. 10013

Dear Robert,

I am in receipt of your letter dated April 19,2005.

Your resignation as an Officer and Director of UFO Contemporary Inc. is accepted.

As you are well aware, UFO cannot afford to satisfy your demand to receive a salary of $1,500 per week, plus benefits, pending your voluntary departure from UFO;however, the corporation can offer you a salary of $500 per week.

You have been removed as a signatory of the UFO checking account.

Your letter contains inaccuracies and mischaracterizations.

Be assured that the officers and directors of UFO will continue to manage the corporation in accordance with their fiduciary duties.

I agree that we should have a meeting to discuss your resignation and other business issues.I will contact the appropriate parties to be in attendance at this meeting.I would like this meeting to take place on Friday April 29,2005, at 11:00 a.m. at the UFO offices.

Please confirm that you are available for this meeting at this time.

Sincerely,

Evelyn Brody
UFO Contemporary Inc.

cc:Lorna Brody

Mrs. Evelyn Brody
UFO
466 Broome Street
New York, NY 10013

Mother:

My resignation was not voluntary because my position at UFO became untenable by your unwillingness to pay me a salary for the work I performed. You created a breech of Leo's and your promise that Lorna and I would be equal partners in addition to supporting the other principal's indiscriminate use of business assets for personal benefit.

Since you have not addressed the monies owed to me, I expect to receive whatever monies are owed to me 30 days from the date of my resignation and the $1,500 per week as long as I am working at UFO.

I am willing to meet with you at a time and place of your choosing as long as I confirm others in attendance. I must know other parties attending prior to scheduling this meeting. The only people in attendance should be shareholders.

Sincerely,


Robert Brody


Cc: Lorna Brody

## STANDARD FORM OF LOFT LEASE
### The Real Estate Board of New York, Inc.

**Agreement of Lease**, made as of this 8 day of October 19 97 , between 466 BROOME STREET OF NEW YORK CITY INC., a New York corporation with offices at: 466 Broome Street, New York, N.Y. party of the first part; hereinafter referred to as OWNER, and UFO CONTEMPORARY, INC., a New York corporation with offices at 466 Broome Street, New York, N.Y. party of the second part, hereinafter referred to as TENANT,

**Witnesseth:** Owner hereby leases to Tenant and Tenant hereby hires from Owner

in the building known as 466 Broome Street in the Borough of Manhattan , City of New York, for the term of ten (10) years

(or until such term shall sooner cease and expire as hereinafter provided) to commence on the 8th day of October nineteen hundred and ninety-seven , and to end on the 7th day of October two thousand and seven both dates inclusive, at an annual rental rate of and One Hundred and Twelve Thousand ($112,000) Dollars

which Tenant agrees to pay in lawful money of the United States which shall be legal tender in payment of all debts and dues, public and private, at the time of payment, in equal monthly installments in advance on the first day of each month during said term, at the office of Owner or such other place as Owner may designate, without any set off or deduction whatsoever, except that Tenant shall pay the first monthly installment(s) on the execution hereof (unless this lease be a renewal).

In the event that, at the commencement of the term of this lease, or thereafter, Tenant shall be in default in the payment of rent to Owner pursuant to the terms of another lease with Owner or with Owner's predecessor in interest, Owner may at Owner's option add the amount of such arrears to any monthly installment of rent payable hereunder and the same shall be payable to Owner as additional rent.

The parties hereto, for themselves, their heirs, distributees, executors, administrators, legal representatives, successors and assigns, hereby covenant as follows:

**Rent:** 1. Tenant shall pay the rent as above and as hereinafter provided.

**Occupancy:** 2. Tenant shall use and occupy demised premises for **offices and stores**

provided such use is in accordance with the certificate of occupancy for the building, if any, and for no other purpose.

**Alterations:** 3. Tenant shall make no changes in or to the demised premises of any nature without Owner's prior written consent. Subject to the prior written consent of Owner, and to the provisions of this article, Tenant, at Tenant's expense, may make alterations, installations, additions or improvements which are nonstructural and which do not affect utility services or plumbing and electrical lines, in or to the interior of the demised premises using contractors or mechanics first approved in each instance by Owner. Tenant shall, at its expense, before making any alterations, additions, installations or improvements obtain all permits, approval and certificates required by any governmental or quasi-governmental bodies and (upon completion) certificates of final approval thereof and shall deliver promptly duplicates of all such permits, approvals and certificates to Owner. Tenant agrees to carry and will cause Tenant's contractors and sub-contractors to carry such workman's compensation, general liability, personal and property damage insurance as Owner may require. If any mechanic's lien is filed against the demised premises, or the building of which the same forms a part, for work claimed to have been done for, or materials furnished to, Tenant, whether or not done pursuant to this article, the same shall be discharged by Tenant within thirty days thereafter, at Tenant's expense, by payment or filing the bond required by law or otherwise. All fixtures and all paneling, partitions, railings and like installations, installed in the premises at any time, either by Tenant or by Owner on Tenant's behalf, shall, upon installation, become the property of Owner and shall remain upon and be surrendered with the demised premises unless Owner, by notice to Tenant no later than twenty days prior to the date fixed as the termination of this lease, elects to relinquish Owner's right thereto and to have them removed by Tenant, in which event the same shall be removed from the demised premises by Tenant prior to the expiration of the lease, at Tenant's expense. Nothing in this Article shall be construed to give Owner title to or to prevent Tenant's removal of trade fixtures, moveable office furniture and equipment, but upon removal of any such from the premises or upon removal of other installations as may be required by Owner, Tenant shall immediately and at its expense, repair and restore the premises to the condition existing prior to installation and repair any damage to the demised premises or the building due to such removal. All property permitted or required to be removed by Tenant at the end of the term remaining in the premises after Tenant's removal shall be deemed abandoned and may, at the election of Owner, either be retained as Owner's property or removed from the premises by Owner, at Tenant's expense.

**Repairs:** 4. Owner shall maintain and repair the exterior of and the public portions of the building. Tenant shall, throughout the term of this lease, take good care of the demised premises including the bathrooms and lavatory facilities (if the demised premises encompass the entire floor of the building) and the windows and window frames and, the fixtures and appurtenances therein and at Tenant's sole cost and expense promptly make all repairs thereto and to the building, whether structural or non-structural in nature, caused by or resulting from carelessness, omission, neglect or improper conduct of Tenant, Tenant's servants, employees, invitees, or licensees, and whether or not arising from such Tenant conduct or omission, when required by other provisions of this lease, including Article 6. Tenant shall also repair all damage to the building

and the demised premises caused by the moving of Tenant's fixtures, furniture or equipment. All the aforesaid repairs shall be of quality or class equal to the original work or construction. If Tenant fails, after ten days notice, to proceed with due diligence to make repairs required to be made by Tenant, the same may be made by the Owner at the expense of Tenant, and the expenses thereof incurred by Owner shall be collectible, as additional rent, after rendition of a bill or statement therefor. If the demised premises be or become infested with vermin, Tenant shall, at its expense, cause the same to be exterminated. Tenant shall give Owner prompt notice of any defective condition in any plumbing, heating system or electrical lines located in the demised premises and following such notice, Owner shall remedy the condition with due diligence, but at the expense of Tenant, if repairs are necessitated by damage or injury attributable to Tenant, Tenant's servants, agents, employees, invitees or licensees as aforesaid. Except as specifically provided in Article 9 or elsewhere in this lease, there shall be no allowance to the Tenant for a diminution of rental value and no liability on the part of Owner by reason of inconvenience, annoyance or injury to business arising from Owner, Tenant or others making or failing to make any repairs, alterations, additions or improvements in or to any portion of the building or the demised premises or in and to the fixtures, appurtenances or equipment thereof. It is specifically agreed that Tenant shall not be entitled to any set off or reduction of rent by reason of any failure of Owner to comply with the covenants of this or any other article of this lease. Tenant agrees that Tenant's sole remedy at law in such instance will be by way of any action for damages for breach of contract. The provisions of this Article 4 with respect to the making of repairs shall not apply in the case of fire or other casualty with regard to which Article 9 hereof shall apply.

**Window Cleaning:** 5. Tenant will not clean nor require, permit, suffer or allow any window in the demised premises to be cleaned from the outside in violation of Section 202 of the New York State Labor Law or any other applicable law or of the Rules of the Board of Standards and Appeals, or of any other Board or body having or asserting jurisdiction.

**Requirements of Law, Fire Insurance:** 6. Prior to the commencement of the lease term, if Tenant is then in possession, and at all times thereafter Tenant shall, at Tenant's sole cost and expense, promptly comply with all present and future laws, orders and regulations of all state, federal, municipal and local governments, departments, commissions and boards and any direction of any public officer pursuant to law, and all orders, rules and regulations of the New York Board of Fire Underwriters, or the Insurance Services Office, or any similar body which shall impose any violation, order or duty upon Owner or Tenant with respect to the demised premises, whether or not arising out of Tenant's use or manner of use thereof, or, with respect to the building, if arising out of Tenant's use or manner of use of the demised premises or the building (including the use permitted under the lease). Except as provided in Article 30 hereof, nothing herein shall require Tenant to make structural repairs or alterations unless Tenant has, by its manner of use of the demised premises or method of operation therein, violated any such laws, ordinances, orders, rules, regulations or requirements with respect thereto. Tenant shall not do or

thing to be done in or to the demised premises which is ... or which will constitute or be in conflict with public liability ... policies of insurance at any time carried by or for the Owner. Tenant shall not keep anything in the demised premises ... or hereafter permitted by the Fire Department, Board of Fire Underwriters, Fire Insurance Rating Organization and other authority having jurisdiction, and then only in such manner and such quantity so as not to increase the rate for fire insurance applicable to the building, nor use the premises in a manner which will increase the insurance rate for the building or any property located therein over that in effect prior to the commencement of Tenant's occupancy. If by reason of failure to comply with the foregoing the fire insurance rate shall, at the beginning of this lease or at any time thereafter, be higher than it otherwise would be, then Tenant shall reimburse Owner, as additional rent hereunder, for that portion of all fire insurance premiums thereafter paid by Owner which shall have been charged because of such failure by Tenant. In any action or proceeding wherein Owner and Tenant are parties, a schedule or "make-up" or rate for the building or demised premises issued by a body making fire insurance rates applicable to said premises shall be conclusive evidence of the facts therein stated and of the several items and charges in the fire insurance rates then applicable to said premises. Tenant shall not place a load upon any floor of the demised premises exceeding the floor load per square foot area which it was designed to carry and which is allowed by law. Owner reserves the right to prescribe the weight and position of all safes, business machines and mechanical equipment. Such installations shall be placed and maintained by Tenant, at Tenant's expense, in settings sufficient, in Owner's judgement, to absorb and prevent vibration, noise and annoyance.

**Subordination:** 7. This lease is subject and subordinate to all ground or underlying leases and to all mortgages which may now or hereafter affect such leases or the real property of which demised premises are a part and to all renewals, modifications, consolidations, replacements and extensions of any such underlying leases and mortgages. This clause shall be self-operative and no further instrument or subordination shall be required by any ground or underlying lease or by any mortgagee, affecting any lease or the real property of which the demised premises are a part. In confirmation of such subordination, Tenant shall from time to time execute promptly any certificate that Owner may request.

**Tenant's Liability Insurance Property Loss, Damage, Indemnity:** 8. Owner or its agents shall not be liable for any damage to property of Tenant or of others entrusted to employees of the building, nor for loss of or damage to any property of Tenant by theft or otherwise, nor for any injury or damage to persons or property resulting from any cause of whatsoever nature, unless caused by or due to the negligence of Owner, its agents, servants or employees; Owner or its agents shall not be liable for any damage caused by other tenants or persons in, upon or about said building or caused by operations in connection of any private, public or quasi public work. If at any time any windows of the demised premises are temporarily closed, darkened or bricked up (or permanently closed, darkened or bricked up if required by law) for any reason whatsoever including, but not limited to Owner's own acts, Owner shall not be liable for any damage Tenant may sustain thereby and Tenant shall not be entitled to any compensation therefor nor abatement or diminution of rent nor shall the same release Tenant from its obligations hereunder nor constitute an eviction. Tenant shall indemnify and save harmless Owner against and from all liabilities, obligations, damages, penalties, claims, costs and expenses for which Owner shall not be reimbursed by insurance, including reasonable attorney's fees, paid, suffered or incurred as a result of any breach by Tenant, Tenant's agents, contractors, employees, invitees, or licensees, of any covenant or condition of this lease, or the carelessness, negligence or improper conduct of the Tenant, Tenant's agents, contractors, employees, invitees or licensees. Tenant's liability under this lease extends to the acts and omissions of any sub-tenant, and any agent, contractor, employee, invitee or licensee of any sub-tenant. In case any action or proceeding is brought against Owner by reason of any such claim, Tenant, upon written notice from Owner, will, at Tenant's expense, resist or defend such action or proceeding by counsel approved by Owner in writing, such approval not to be unreasonably withheld.

**Destruction, Fire and Other Casualty:** 9. (a) If the demised premises or any part thereof shall be damaged by fire or other casualty, Tenant shall give immediate notice thereof to Owner and this lease shall continue in full force and effect except as hereinafter set forth. (b) If the demised premises are partially damaged or rendered partially unusable by fire or other casualty, the damages thereto shall be repaired by and at the expense of Owner and the rent and other items of additional rent, until such repair shall be substantially completed, shall be apportioned from the day following the casualty according to the part of the premises which is usable. (c) If the demised premises are totally damaged or rendered wholly unusable by fire or other casualty, then the rent and other items of additional rent as hereinafter expressly provided shall be proportionately paid up to the time of the casualty and thenceforth shall cease until the date when the premises shall have been repaired and restored by Owner (or sooner reoccupied in part by Tenant then rent shall be apportioned as provided in subsection (b) above), subject to Owner's right to elect not to restore the same as hereinafter provided. (d) If the demised premises are rendered wholly unusable or (whether or not the demised premises are damaged in whole or in part) if the building shall be so damaged that Owner shall decide to demolish it or to rebuild it, then, in any of such events, Owner may elect to terminate this lease by written notice to Tenant, given within 90 days after such fire or casualty, or 30 days after adjustment of the insurance claim for such fire or casualty, whichever is sooner, specifying a date for the expiration of the lease, which date shall not be more than 60 days after the giving of such notice, and upon the date specified in such notice the term of this lease shall expire as fully and completely as if such date were the date set forth above for the termination of this lease and Tenant shall forthwith quit, surrender and vacate the premises without prejudice however, to Owner's rights and remedies against Tenant under the lease provisions in effect prior to such termination, and any rent owing shall be paid up to such date and any payments of rent

☞ Rider to be added if necessary.

made by Tenant which were on account of any period subsequent to such date shall be returned to Tenant. Unless Owner shall serve a termination notice as provided herein, Owner shall make the repairs and restorations under the conditions of (b) and (c) hereof, with all reasonable expedition, subject to delays due to adjustment of insurance claims, labor troubles and causes beyond Owner's control. After any such casualty, Tenant shall cooperate with Owner's restoration by removing from the premises as promptly as reasonably possible, all of Tenant's salvageable inventory and movable equipment, furniture, and other property. Tenant's liability for rent shall resume five (5) days after written notice from Owner that the premises are substantially ready for Tenant's occupancy. (e) Nothing contained hereinabove shall relieve Tenant from liability that may exist as a result of damage from fire or other casualty. Notwithstanding the foregoing, including Owner's obligation to restore under subparagraph (b) above, each party shall look first to any insurance in its favor before making any claim against the other party for recovery for loss or damage resulting from fire or other casualty, and to the extent that such insurance is in force and collectible and to the extent permitted by law, Owner and Tenant each hereby releases and waives all right of recovery with respect to subparagraphs (b), (d) and (e) above, against the other or any one claiming through or under each of them by way of subrogation or otherwise. The release and waiver herein referred to shall be deemed to include any loss or damage to the demised premises and/or to any personal property, equipment, trade fixtures, goods and merchandise therein. The foregoing release and waiver shall be in force only if both releasors' insurance policies contain a clause providing that such a release or waiver shall not invalidate the insurance. If, and to the extent, that such waiver can be obtained only by the payment of additional premiums, then the party benefitting from the waiver shall pay such premium within ten days after written demand or shall be deemed to have agreed that the party obtaining insurance coverage shall be free of any further obligation under the provisions hereof with respect to waiver of subrogation. Tenant acknowledges that Owner will not carry insurance on Tenant's furniture and or furnishings or any fixtures or equipment, improvements, or appurtenances removable by Tenant and agrees that Owner will not be obligated to repair any damage thereto or replace the same. (f)Tenant hereby waives the provisions of Section 227 of the Real Property Law and agrees that the provisions of this article shall govern and control in lieu thereof.

**Eminent Domain:** 10. If the whole or any part of the demised premises shall be acquired or condemned by Eminent Domain for any public or quasi public use or purpose, then and in that event, the term of this lease shall cease and terminate from the date of the vesting in such proceeding and Tenant shall have no claim for the value of any unexpired term of said lease. Tenant shall have the right to make an independent claim to the condemning authority for the value of Tenant's moving expenses and personal property, trade fixtures and equipment, provided Tenant is entitled pursuant to the terms of the lease to remove such property, trade fixtures and equipment at the end of the term and provided further such claim does not reduce Owner's award.

**Assignment, Mortgage, Etc.:** 11. Tenant, for itself, its heirs, distributees, executors, administrators, legal representatives, successors and assigns, expressly covenants that it shall not assign, mortgage or encumber this agreement, nor underlet, or suffer or permit the demised premises or any part thereof to be used by others, without the prior written consent of Owner in each instance. Transfer of the majority of the stock of a corporate Tenant or the majority partnership interest of a partnership Tenant shall be deemed an assignment. If this lease be assigned, or if the demised premises or any part thereof be underlet or occupied by anybody other than Tenant, Owner may, after default by Tenant, collect rent from the assignee, under-tenant or occupant, and apply the net amount collected to the rent herein reserved, but no such assignment, underletting, occupancy or collection shall be deemed a waiver of this covenant, or the acceptance of the assignee, under-tenant or occupant as tenant, or a release of Tenant from the further performance by Tenant of covenants on the part of Tenant herein contained. The consent by Owner to an assignment or underletting shall not in any wise be construed to relieve Tenant from obtaining the express consent in writing of Owner to any further assignment or underletting.

**Electric Current:** 12. Rates and conditions in respect to submetering or rent inclusion, as the case may be, to be added in RIDER attached hereto. Tenant covenants and agrees that at all times its use of electric current shall not exceed the capacity of existing feeders to the building or the risers or wiring installation and Tenant may not use any electrical equipment which, in Owner's opinion, reasonably exercised, will overload such installations or interfere with the use thereof by other tenants of the building. The change at any time of the character of electric service shall in no wise make Owner liable or responsible to Tenant, for any loss, damages or expenses which Tenant may sustain.

**Access to Premises:** 13. Owner or Owner's agents shall have the right (but shall not be obligated) to enter the demised premises in any emergency at any time, and, at other reasonable times, to examine the same and to make such repairs, replacements and improvements as Owner may deem necessary and reasonably desirable to any portion of the building or which Owner may elect to perform in the premises after Tenant's failure to make repairs or perform any work which Tenant is obligated to perform under this lease, or for the purpose of complying with laws, regulations and other directions of governmental authorities. Tenant shall permit Owner to use and maintain and replace pipes and conduits in and through the demised premises and to erect new pipes and conduits therein provided, wherever possible, they are within walls or otherwise concealed. Owner may, during the progress of any work in the demised premises, take all necessary materials and equipment into said premises without the same constituting an eviction nor shall the Tenant be entitled to any abatement of rent while such work is in progress nor to any damages by reason of loss or interruption of business or otherwise. Throughout the term hereof Owner shall have the right to enter the demised premises at reasonable hours for the purpose of showing the same to prospective purchasers or mortgagees of the building, and during the last six months of the term for the purpose of showing the same to prospective tenants and may, during said six months period, place upon

premises the usual notices, "To Let" and "For Sale" which Tenant shall permit to remain thereon without molestation, and present to open and permit an entry into the demised ... Owner or Owner's agents may enter the same whenever such ... may be necessary or permissible by master key or forcibly and ... reasonable care is exercised to safeguard Tenant's property, such ... shall not render Owner or its agents liable therefor, nor in any event shall the obligations of Tenant hereunder be affected. If during the last month of the term Tenant shall have removed all or substantially all of Tenant's property therefrom. Owner may immediately enter, alter, renovate or redecorate the demised premises without limitation or abatement of rent, or incurring liability to Tenant for any compensation and act ... shall have no effect on this lease or Tenant's obligation hereunder.

**Vault,**
**Vault Space,**
**Area:**

14. No Vaults, vault space or area, whether or not enclosed or covered, not within the property line of the building is leased hereunder anything contained in or indicated on any sketch, blue print or plan, or anything contained elsewhere in this lease to the contrary notwithstanding. Owner makes no representation as to the location of the property line of the building. All vaults and vault space and all such areas not within the property line of the building, which Tenant may be permitted to use and/ or occupy, is to be used and/or occupied under a revocable license, and if any such license be revoked, or if the amount of such space or area be diminished or required by any federal, state or municipal authority or public utility, Owner shall not be subject to any liability nor shall Tenant be entitled to any compensation or diminution or abatement of rent, nor shall such revocation, diminution or requisition be deemed constructive or actual eviction. Any tax, fee or charge of municipal authorities for such vault or area shall be paid by Tenant, if used by Tenant, whether or not specifically leased hereunder.

**Occupancy:**

15. Tenant will not at any time use or occupy the demised premises in violation of the certificate of occupancy issued for the building of which the demised premises are a part. Tenant has inspected the premises and accepts them as is, subject to the riders annexed hereto with respect to Owner's work, if any. In any event, Owner makes no representation as to the condition of the premises and Tenant agrees to accept the same subject to violations, whether or not of record. If any governmental license or permit shall be required for the proper and lawful conduct of Tenant's business, Tenant shall be responsible for and shall procure and maintain such license or permit.

**Bankruptcy:**

16. (a) Anything elsewhere in this lease to the contrary notwithstanding, this lease may be cancelled by Owner by sending of a written notice to Tenant within a reasonable time after the happening of any one or more of the following events: (1) the commencement of a case in bankruptcy or under the laws of any state naming Tenant as the debtor; or (2) the making by Tenant of an assignment or any other arrangement for the benefit of creditors under any state statute. Neither Tenant nor any person claiming through or under Tenant, or by reason of any statute or order of court, shall thereafter be entitled to possession of the premises demised but shall forthwith quit and surrender the premises. If this lease shall be assigned in accordance with its terms, the provisions of this Article 16 shall be applicable only to the party then owning Tenant's interest in this lease.

(b) It is stipulated and agreed that in the event of the termination of this lease pursuant to (a) hereof, Owner shall forthwith, notwithstanding any other provisions of this lease to the contrary, be entitled to recover from Tenant as and for liquidated damages an amount equal to the difference between the rental reserved hereunder for the unexpired portion of the term demised and the fair and reasonable rental value of the demised premises for the same period. In the computation of such damages the difference between any installment of rent becoming due hereunder after the date of termination and the fair and reasonable rental value of the demised premises for the period for which such installment was payable shall be discounted to the date of termination at the rate of four percent (4%) per annum. If such premises or any part thereof be relet by the Owner for the unexpired term of said lease, or any part thereof, before presentation of proof of such liquidated damages to any court, commission or tribunal, the amount of rent reserved upon such reletting shall be deemed to be the fair and reasonable rental value for the part or the whole of the premises so re-let during the term of the re-letting. Nothing herein contained shall limit or prejudice the right of the Owner to prove for and obtain as liquidated damages by reason of such termination, an amount equal to the maximum allowed by any statute or rule of law in effect at the time when, and governing the proceedings in which, such damages are to be proved, whether or not such amount be greater, equal to, or less than the amount of the difference referred to above.

**Default:**

17. (1) If Tenant defaults in fulfilling any of the covenants of this lease other than the covenants for the payment of rent or additional rent; or if the demised premises become vacant or deserted "or if this lease be rejected under §235 of Title 11 of the U.S. Code (bankruptcy code);" or if any execution or attachment shall be issued against Tenant or any of Tenant's property whereupon the demised premises shall be taken or occupied by someone other than Tenant; or if Tenant shall make default with respect to any other lease between Owner and Tenant; or if Tenant shall have failed, after five (5) days written notice, to redeposit with Owner any portion of the security deposited hereunder which Owner has applied to the payment of any rent and additional rent due and payable hereunder or failed to move into or take possession of the premises within thirty (30) days after the commencement of the term of this lease, of which fact Owner shall be the sole judge; then in any one or more of such events, upon Owner serving a written fifteen (15) days notice upon Tenant specifying the nature of said default and upon the expiration of said fifteen (15) days, if Tenant shall have failed to comply with or remedy such default, or if the said default or omission complained of shall be of a nature that the same cannot be completely cured or remedied within said fifteen (15) day period, and if Tenant shall not have diligently commenced during such default within such fifteen (15) day period, and shall not thereafter with reasonable diligence and in good faith, proceed to remedy or cure such default, then Owner may serve a written five (5) days' notice of cancellation of this lease upon Tenant, and upon the expiration of said five

(5) days this lease and the term thereunder ... shall end and expire as fully and completely as if the expiration of such five (5) day period were the day herein definitely fixed for the end and expiration of this lease and the term thereof and Tenant shall then quit and surrender the demised premises to Owner but Tenant shall remain liable as hereinafter provided.

(2) If the notice provided for in (1) hereof shall have been given, and the term shall expire as aforesaid; or if Tenant shall make default in the payment of the rent reserved herein or any item of additional rent herein mentioned or any part of either or in making any other payment herein required; then and in any of such events Owner may without notice, re-enter the demised premises either by force or otherwise, and dispossess Tenant by summary proceedings or otherwise, and the legal representative of Tenant or other occupant of demised premises and remove their effects and hold the premises as if this lease had not been made, and Tenant hereby waives the service of notice of intention to re-enter or to institute legal proceedings to that end. If Tenant shall make default hereunder prior to the date fixed as the commencement of any renewal or extension of this lease, Owner may cancel and terminate such renewal or extension agreement by written notice.

**Remedies of**
**Owner and**
**Waiver of**
**Redemption:**

18. In case of any such default, re-entry, expiration and/or dispossess by summary proceedings or otherwise, (a) the rent, and additional rent, shall become due thereupon and be paid up to the time of such re-entry, dispossess and/or expiration, (b) Owner may re-let the premises or any part or parts thereof, either in the name of Owner or otherwise, for a term or terms, which may at Owner's option be less than or exceed the period which would usually otherwise have constituted the balance of the term of this lease and may grant concessions or free rent or charge a higher rental than that in this lease, (c) Tenant or the legal representatives of Tenant shall also pay Owner as liquidated damages for the failure of Tenant to observe and perform said Tenant's covenants herein contained, any deficiency between the rent hereby reserved and or covenanted to be paid and the net amount, if any, of the rents collected on account of the subsequent lease or leases of the demised premises for each month of the period which would otherwise have constituted the balance of the term of this lease. The failure of Owner to re-let the premises or any part or parts thereof shall not release or affect Tenant's liability for damages. In computing such liquidated damages there shall be added to the said deficiency such expenses as Owner may incur in connection with re-letting, such as legal expenses, reasonable attorneys' fees, brokerage, advertising and for keeping the demised premises in good order or for preparing the same for re-letting. Any such liquidated damages shall be paid in monthly installments by Tenant on the rent day specified in this lease and any suit brought to collect the amount of the deficiency for any month shall not prejudice in any way the rights of Owner to collect the deficiency for any subsequent month by a similar proceeding. Owner, in putting the demised premises in good order or preparing the same for re-rental may, at Owner's option, make such alterations, repairs, replacements, and/or decorations in the demised premises as Owner, in Owner's sole judgment, considers advisable and necessary for the purpose of re-letting the demised premises, and the making of such alterations, repairs, replacements, and/or decorations shall not operate or be construed to release Tenant from liability hereunder as aforesaid. Owner shall in no event be liable in any way whatsoever for failure to re-let the demised premises, or in the event that the demised premises are re-let, for failure to collect the rent thereof under such re-letting, and in no event shall Tenant be entitled to receive any excess, if any, of such net rents collected over the sums payable by Tenant to Owner hereunder. In the event of a breach or threatened breach by Tenant of any of the covenants or provisions hereof, Owner shall have the right of injunction and the right to invoke any remedy allowed at law or in equity as if re-entry, summary proceedings and other remedies were not herein provided for. Mention in this lease of any particular remedy, shall not preclude Owner from any other remedy, in law or in equity. Tenant hereby expressly waives any and all rights of redemption granted by or under any present or future laws.

**Fees and**
**Expenses:**

19. If Tenant shall default in the observance or performance of any term or covenant on Tenant's part to be observed or performed under or by virtue of any of the terms or provisions in any article of this lease, after notice if required and upon expiration of any applicable grace period if any, (except in an emergency), then, unless otherwise provided elsewhere in this lease, Owner may immediately or at any time thereafter and without notice perform the obligation of Tenant thereunder. If Owner, in connection with the foregoing or in connection with any default by Tenant in the covenant to pay rent hereunder, makes any expenditures or incurs any obligations for the payment of money, including but not limited to reasonable attorney's fees, in instituting, prosecuting or defending any action or proceedings, and prevails in any such action or proceeding, then Tenant will reimburse Owner for such sums so paid or obligations incurred with interest and costs. The foregoing expenses incurred by reason of Tenant's default shall be deemed to be additional rent hereunder and shall be paid by Tenant to Owner within ten (10) days of rendition of any bill or statement to Tenant therefor. If Tenant's lease term shall have expired at the time of making of such expenditures or incurring of such obligations, such sums shall be recoverable by Owner as damages.

**Building**
**Alterations**
**and**
**Management:**

20. Owner shall have the right at any time without the same constituting an eviction and without incurring liability to Tenant therefor to change the arrangement and or location of public entrances, passageways, doors, doorways, corridors, elevators, stairs, toilets or other public parts of the building and to change the name, number or designation by which the building may be known. There shall be no allowance to Tenant for diminution of rental value and no liability on the part of Owner by reason of inconvenience, annoyance or injury to business arising from Owner or other Tenant making any repairs in the building or any such alterations, additions and improvements. Furthermore, Tenant shall not have any claim against Owner by reason of Owner's imposition of any control of the manner of access to the building by Tenant's social or business visitors as the Owner may deem necessary for the security of the building and its occupants.

**No Repre-**
**sentations by**
**Owner:**

21. Neither Owner nor Owner's agents have made any representations or promises with respect to the physical condition of the building, the land upon which it is erected or the demised premises, the rents, leases, expenses of operation or any other matter or thing affecting or related to the demised premises or the building except as herein expressly set forth and no rights, easements or licenses are acquired by Tenant by implication or otherwise except as expressly set forth in the

proceeding or counterclaim brought by either of the parties hereto against the other (except for personal injury or property damage) on any matters whatsoever arising out of or in any way connected with this lease, the relationship of Owner and Tenant, Tenant's use of or occupancy of said premises, and any emergency statutory or any other statutory remedy. It is further mutually agreed that in the event Owner commences any proceeding or action for possession including a summary proceeding for possession of the premises, Tenant will not interpose any counterclaim of

**No Representations by Owner:** 21. Neither Owner nor Owner's agents have made any representations or promises with respect to the physical condition of the building, the land upon which it is erected or the demised premises, the rents, leases, expenses of operation or any other matter or thing affecting or related to the demised premises or the building except as herein expressly set forth and no rights, easements or licenses are acquired by Tenant by implication or otherwise except as expressly set forth in the provisions of this lease. Tenant has inspected the building and the demised premises and is thoroughly acquainted with their condition and agrees to take the same "as is" on the date possession is tendered and acknowledges that the taking of possession of the demised premises by Tenant shall be conclusive evidence that the said premises and the building of which the same form a part were in good and satisfactory condition at the time such possession was so taken, except as to latent defects. All understandings and agreements heretofore made between the parties hereto are merged in this contract, which alone fully and completely expresses the agreement between Owner and Tenant and any executory agreement hereafter made shall be ineffective to change, modify, discharge or effect an abandonment of it in whole or in part, unless such executory agreement is in writing and signed by the party against whom enforcement of the change, modification, discharge or abandonment is sought.

**End of Term:** 22. Upon the expiration or other termination of the term of this lease, Tenant shall quit and surrender to Owner the demised premises, broom clean, in good order and condition, ordinary wear and damages which Tenant is not required to repair as provided elsewhere in this lease excepted, and Tenant shall remove all its property from the demised premises. Tenant's obligation to observe or perform this covenant shall survive the expiration or other termination of this lease. If the last day of the term of this Lease or any renewal thereof, falls on Sunday, this lease shall expire at noon on the preceding Saturday unless it be a legal holiday in which case it shall expire at noon on the preceding business day.

**Quiet Enjoyment:** 23. Owner covenants and agrees with Tenant that upon Tenant paying the rent and additional rent and observing and performing all the terms, covenants and conditions, on Tenant's part to be observed and performed, Tenant may peaceably and quietly enjoy the premises hereby demised, subject, nevertheless, to the terms and conditions of this lease including, but not limited to, Article 34 hereof and to the ground leases, underlying leases and mortgages hereinbefore mentioned.

**Failure to Give Possession:** 24. If Owner is unable to give possession of the demised premises on the date of the commencement of the term hereof, because of the holding-over or retention of possession of any tenant, undertenant or occupants or if the demised premises are located in a building being constructed, because such building has not been sufficiently completed to make the premises ready for occupancy or because of the fact that a certificate of occupancy has not been procured or if Owner has not completed any work required to be performed by Owner, or for any other reason, Owner shall not be subject to any liability for failure to give possession on said date and the validity of the lease shall not be impaired under such circumstances, nor shall the same be construed in any wise to extend the term of this lease, but the rent payable hereunder shall be abated (provided Tenant is not responsible for Owner's inability to obtain possession or complete any work required) until after Owner shall have given Tenant notice that Owner is able to deliver possession in the condition required by this lease. If permission is given to Tenant to enter into the possession of the demised premises or to occupy premises other than the demised premises prior to the date specified as the commencement of the term of this lease, Tenant covenants and agrees that such possession and/ or occupancy shall be deemed to be under all the terms, covenants, conditions and provisions of this lease, except the obligation to pay the fixed annual rent set forth in page one of this lease. The provisions of this article are intended to constitute "an express provision to the contrary" within the meaning of Section 223-a of the New York Real Property Law.

**No Waiver:** 25. The failure of Owner to seek redress for violation of, or to insist upon the strict performance of any covenant or condition of this lease or of any of the Rules or Regulations, set forth or hereafter adopted by Owner, shall not prevent a subsequent act which would have originally constituted a violation from having all the force and effect of an original violation. The receipt by Owner of rent with knowledge of the breach of any covenant of this lease shall not be deemed a waiver of such breach and no provision of this lease shall be deemed to have been waived by Owner unless such waiver be in writing signed by Owner. No payment by Tenant or receipt by Owner of a lesser amount than the monthly rent herein stipulated shall be deemed to be other than on account of the earliest stipulated rent, nor shall any endorsement or statement of any check or any letter accompanying any check or payment as rent be deemed an accord and satisfaction, and Owner may accept such check or payment without prejudice to Owner's right to recover the balance of such rent or pursue any other remedy in this lease provided. All checks tendered to Owner as and for the rent of the demised premises shall be deemed payments for the account of Tenant. Acceptance by Owner of rent from anyone other than Tenant shall not be deemed to operate as an attornment to Owner by the payor of such rent or as a consent by Owner to an assignment or subletting by Tenant of the demised premises to such payor, or as a modification of the provisions of this lease. No act or thing done by Owner or Owner's agents during the term hereby demised shall be deemed an acceptance of a surrender of said premises and no agreement to accept such surrender shall be valid unless in writing signed by Owner. No employee of Owner or Owner's agent shall have any power to accept the keys of said premises prior to the termination of the lease and the delivery of keys to any such agent or employee shall not operate as a termination of the lease or a surrender of the premises.

**Waiver of Trial by Jury:** 26. It is mutually agreed by and between Owner and Tenant that the respective parties hereto shall and they hereby do waive trial by jury in any action,

**⌖** Space to be filled in or deleted.

proceeding or counterclaim brought by either of the parties hereto against the other (except for personal injury or property damage) on any matters whatsoever arising out of or in any way connected with this lease, the relationship of Owner and Tenant, Tenant's use of or occupancy of said premises, and any emergency statutory or any other statutory remedy. It is further mutually agreed that in the event Owner commences any proceeding or action for possession including a summary proceeding for possession of the premises, Tenant will not interpose any counterclaim of whatever nature or description in any such proceeding including a compulsory counter-claim under Article 4 except for statutory mandatory counterclaims.

**Inability to Perform:** 27. This Lease and the obligation of Tenant to pay rent hereunder and perform all of the other covenants and agreements hereunder on part of Tenant to be performed shall in no wise be affected, impaired or excused because Owner is unable to fulfill any of its obligations under this lease or to supply or is delayed in supplying any service expressly or impliedly to be supplied or is unable to make, or is delayed in making any repair, additions, alterations or decorations or is unable to supply or is delayed in supplying any equipment, fixtures or other materials if Owner is prevented or delayed from doing so by reason of strike or labor troubles or any cause whatsoever beyond Owner's sole control including, but not limited to, government preemption or restrictions or by reason of any rule, order or regulation of any department or subdivision thereof of any government agency or by reason of the conditions which have been or are affected, either directly or indirectly, by war or other emergency.

**Bills and Notices:** 28. Except as otherwise in this lease provided, a bill statement, notice or communication which Owner may desire or be required to give to Tenant, shall be deemed sufficiently given or rendered if, in writing, delivered to Tenant personally or sent by registered or certified mail addressed to Tenant at the building of which the demised premises form a part or at the last known residence address or business address of Tenant or left at any of the aforesaid premises addressed to Tenant, and the time of the rendition of such bill or statement and of the giving of such notice or communication shall be deemed to be the time when the same is delivered to Tenant, mailed, or left at the premises as herein provided. Any notice by Tenant to Owner must be served by registered or certified mail addressed to Owner at the address first hereinabove given or at such other address as Owner shall designate by written notice.

**Water Charges:** 29. If Tenant requires, uses or consumes water for any purpose in addition to ordinary lavatory purposes (of which fact Tenant constitutes Owner to be the sole judge) Owner may install a water meter and thereby measure Tenant's water consumption for all purposes. Tenant shall pay Owner for the cost of the meter and the cost of the installation, thereof and throughout the duration of Tenant's occupancy Tenant shall keep said meter and installation equipment in good working order and repair at Tenant's own cost and expense in default of which Owner may cause such meter and equipment to be replaced or repaired and collect the cost thereof from Tenant, as additional rent. Tenant agrees to pay for water consumed, as shown on said meter as and when bills are rendered, and on default in making such payment Owner may pay such charges and collect the same from Tenant, as additional rent. Tenant covenants and agrees to pay, as additional rent, the sewer rent, charge or any other tax, rent, levy or charge which now or hereafter is assessed, imposed or a lien upon the demised premises or the realty of which they are part pursuant to law, order or regulation made or issued in connection with the use, consumption, maintenance or supply of water, water system or sewage or sewage connection or system. If the building or the demised premises or any part thereof is supplied with water through a meter through which water is also supplied to other premises Tenant shall pay to Owner, as additional rent, ____ on the first day of each month, ____ %
(  $      ) of the total meter charges as Tenant's portion. Independently of and in addition to any of the remedies reserved to Owner hereinabove or elsewhere in this lease, Owner may sue for and collect any monies to be paid by Tenant or paid by Owner for any of the reasons or purposes hereinabove set forth.

**Sprinklers:** 30. Anything elsewhere in this lease to the contrary notwithstanding, if the New York Board of Fire Underwriters or the New York Fire Insurance Exchange or any bureau, department or official of the federal, state or city government recommend or require the installation of a sprinkler system or that any changes, modifications, alterations, or additional sprinkler heads or other equipment be made or supplied in an existing sprinkler system by reason of Tenant's business, or the location of partitions, trade fixtures, or other contents of the demised premises, or for any other reason, or if any such sprinkler system installations, modifications, alterations, additional sprinkler heads or other such equipment, become necessary to prevent the imposition of a penalty or charge against the full allowance for a sprinkler system in the fire insurance rate set by any fire insurance company, Tenant shall, at Tenant's expense, promptly make such sprinkler system installations, changes, modifications, alterations, and supply additional sprinkler heads or other equipment as required whether the work involved shall be structural or non-structural in nature. Tenant shall pay to Owner as additional rent the sum of $ ____ on the first day of each month during the term of this lease, as Tenant's portion of the contract price for sprinkler supervisory service.

**Elevators, Heat, Cleaning:** 31. As long as Tenant is not in default under any the covenants of this lease beyond the applicable grace period provided in this lease for the curing of such defaults, Owner shall: (a) provide necessary passenger elevator facilities on business days from 8 a.m. to 6 p.m. and on Saturdays from 8 a.m. to 1 p.m.; (b) if freight elevator service is provided, same shall be provided only on regular business days Monday through Friday inclusive, and on those days only between the hours of 9 a.m. and 12 noon and between 1 p.m. and 5 p.m.; (c) furnish heat, water and other services supplied by Owner to the demised premises, when and as required by law, on business days from 8 a.m. to 6 p.m. and on Saturdays from 8

a.m. to 1 p.m.; (d) clean the public halls and public portions of the building which are used in common by all tenants. Tenant shall, at Tenant's expense, keep the demised premises, including the windows, clean and in order, to the reasonable satisfaction of Owner, and for that purpose shall employ the person or persons, or corporation approved by Owner. Tenant shall pay to Owner the cost of removal of any of Tenant's refuse and rubbish from the building. Bills for the same shall be rendered by Owner to Tenant at such time as Owner may elect and shall be due and payable hereunder, and the amount of such bills shall be deemed to be, and be paid as, additional rent. Tenant shall, however, have the option of independently contracting for the removal of such rubbish and refuse in the event that Tenant does not wish to have same done by employees of Owner. Under such circumstances, however, the removal of such refuse and rubbish by others shall be subject to such rules and regulations as, in the judgment of Owner, are necessary for the proper operation of the building. Owner reserves the right to stop service of the heating, elevator, plumbing and electric systems, when necessary, by reason of accident, or emergency, or for repairs, alterations, replacements or improvements, in the judgment of Owner desirable or necessary to be made, until said repairs, alterations, replacements or improvements shall have been completed. If the building of which the demised premises are a part applies manually operated elevator service, Owner may proceed diligently with alterations necessary to substitute automatic control elevator service without in any way affecting the obligations of Tenant hereunder.

**Security:** 32. Tenant has deposited with Owner the sum of $ –0– as security for the faithful performance and observance by Tenant of the terms, provisions and conditions of this lease; it is agreed that in the event Tenant defaults in respect of any of the terms, provisions and conditions of this lease, including, but not limited to, the payment of rent and additional rent, Owner may use, apply or retain the whole or any part of the security so deposited to the extent required for the payment of any rent and additional rent or any other sum as to which Tenant is in default or for any sum which Owner may expend or may be required to expend by reason of Tenant's default in respect of any of the terms, covenants and conditions of this lease, including but not limited to, any damages or deficiency in the reletting of the premises, whether such damages or deficiency accrued before or after the date fixed as the end of the Lease and after delivery of entire possession of the demised premises to Owner. In the event that Tenant shall fully and faithfully comply with all of the terms, provisions, covenants and conditions of this lease, the security shall be returned to Tenant after the date fixed as the end of the Lease and after delivery of entire possession of the demised premises to Owner. In the event of a sale of the land and building or leasing of the building, of which the demised premises form a part, Owner shall have the right to transfer the security to the vendee or lessee and Owner shall thereupon be released by Tenant from all liability for the return of such security; and Tenant agrees to look to the new Owner solely for the return of said security, and it is agreed that the provisions hereof shall apply to every transfer or assignment made of the security to a new Owner. Tenant further covenants that it will not assign or encumber or attempt to assign or encumber the monies deposited herein as security and that neither Owner nor its successors or assigns shall be bound by any such assignment, encumbrance, attempted assignment or attempted encumbrance.

**Captions:** 33. The Captions are inserted only as a matter of convenience and for reference and in no way define, limit or describe the scope of this lease nor the intent of any provision thereof.

**Definitions:** 34. The term "Owner" as used in this lease means only the owner of the fee or of the leasehold of the building, or the mortgagee in possession, for the time being of the land and building (or the owner of a lease of the building or of the land and building) of which the demised premises form a part, so that in the event of any sale or sales of said land and building or of said lease, or in the event of a lease of said building, or of the land and building, the said Owner shall be and hereby is entirely freed and relieved of all covenants and obligations of Owner hereunder, and it shall be deemed and construed without further agreement between the parties or their successors in interest, or between the parties and the purchaser, at any such sale, or the said lessee of the building, or of the land and building, that the purchaser or the lessee of the building has assumed and agreed to carry out any and all covenants and obligations of Owner hereunder. The words "re-enter" and "re-entry" as used in this lease are not restricted to their technical legal meaning. The term "rent" includes the annual rental rate whether so expressed or expressed in monthly installments, and "additional rent." "Additional rent" means all sums which shall be due to Owner from Tenant under this lease, in addition to the annual rental rate. The term "business days" as used in this lease, shall exclude Saturdays, Sundays and all days observed by the State or Federal Government as legal holidays and those designated as holidays by the applicable building service union employees service contract or by the applicable Operating Engineers contract with respect to HVAC service. Wherever it is expressly provided in this lease that consent shall not be unreasonably withheld, such consent shall not be unreasonably delayed.

**Adjacent Excavation-Sharing:** 35. If an excavation shall be made upon land adjacent to the demised premises, or shall be authorized to be made, Tenant shall afford to the person causing or authorized to cause such excavation, license to enter upon the demised premises for the purpose of doing such work as said person shall deem necessary to preserve the wall or the building of which demised premises form a part from injury or damage and to support the same by proper foundations without any claim for damages or indemnity against Owner, or diminution or abatement of rent.

**Rules and Regulations:** 36. Tenant and Tenant's servants, employees, agents, visitors, and licensees shall observe faithfully, and comply strictly with, the Rules and Regulations annexed hereto and such other and further reasonable Rules and Regulations as Owner or Owner's agents may from time to time adopt. Notice of any additional rules or regulations shall be given in such manner as Owner may elect. In case Tenant disputes the reasonableness of any additional Rule or Regulation hereafter made or adopted by Owner or Owner's agents, the parties hereto agree to submit the question of the reasonableness of such Rule or Regulation for decision to the New York office of the American Arbitration Association, whose determination shall be final and conclusive upon the parties hereto. The right to dispute the reasonableness of any additional Rule or Regulation upon Tenant's part shall be deemed waived unless the same shall be asserted by service of a notice, in writing upon Owner within fifteen (15) days after the giving of notice thereof. Nothing in this lease contained shall be construed to impose upon Owner any duty or obligation to enforce the Rules and Regulations or terms, covenants or conditions in any other lease, as against any other tenant and Owner shall not be liable to Tenant for violation of the same by any other tenant, its servants, employees, agents, visitors or licensees.

**Glass:** 37. Owner shall replace, at the expense of the Tenant, any and all plate and other glass damaged or broken from any cause whatsoever in and about the demised premises. Owner may insure, and keep insured, at Tenant's expense, all plate and other glass in the demised premises for and in the name of Owner. Bills for the premiums therefor shall be rendered by Owner to Tenant at such times as Owner may elect, and shall be due from, and payable by, Tenant when rendered, and the amount thereof shall be deemed to be, and be paid, as additional rent.

**Estoppel Certificate:** 38. Tenant, at any time, and from time to time, upon at least 10 days' prior notice by Owner, shall execute, acknowledge and deliver to Owner, and/or to any other person, firm or corporation specified by Owner, a statement certifying that this Lease is unmodified in full force and effect (or, if there have been modifications, that the same is in full force and effect as modified and stating the modifications), stating the dates to which the rent and additional rent have been paid, and stating whether or not there exists any default by Owner under this Lease, and, if so, specifying each such default.

**Directory Board Listing:** 39. If, at the request of and as accommodation to Tenant, Owner shall place upon the directory board in the lobby of the building, one or more names of persons other than Tenant, such directory board listing shall not be construed as the consent by Owner to an assignment or subletting by Tenant to such person or persons.

**Successors and Assigns:** 40. The covenants, conditions and agreements contained in this lease shall bind and inure to the benefit of Owner and Tenant and their respective heirs, distributees, executors, administrators, successors, and except as otherwise provided in this lease, their assigns. Tenant shall look only to Owner's estate and interest in the land and building for the satisfaction of Tenant's remedies for the collection of a judgment (or other judicial process) against Owner in the event of any default by Owner hereunder, and no other property or assets of such Owner (or any partner, member, officer or director thereof, disclosed or undisclosed), shall be subject to levy, execution or other enforcement procedure for the satisfaction of Tenant's remedies under or with respect to this lease, the relationship of Owner and Tenant hereunder, or Tenant's use and occupancy of the demised premises.

[✍] Space to be filled in or deleted.

**In Witness Whereof,** Owner and Tenant have respectively signed and sealed this lease as of the day and year first above written.

Witness for Owner:

...............................................

...............................................

466 BROOME STREET OF NEW YORK CITY INC. [CORP SEAL]

By: Donna Buddy [L.S]

UFO CONTEMPORARY, INC.

By: Donna Buddy [CORP SEAL]

Witness for Tenant

...............................................

...............................................

[L.S]

RIDER to Lease dated October 8 ,1997, between
466 BROOME STREET OF NEW YORK CITY INC.
and UFO CONTEMPORARY, INC.

41.  All the terms and conditions of this Lease shall continue in effect until such time as 466 BROOME STREET OF NEW YORK CITY INC. (Owner) has signed a lease or leases with an unrelated third party or parties whereupon the annual rent due under this Lease with UFO CONTEMPORARY, INC. or a related company or entity (Tenant) shall be reduced to an amount equal to $112,000 less the rent per annum due under the unrelated third party lease or leases.

466 BROOME STREET OF NEW YORK CITY INC.

By: _Lorna Brody_____


UFO CONTEMPORARY, INC.

By: _Lorna Brody_____

# 466 Broome Street of NYC, Inc.
## Rental Income
### January through December 2004

| Type | Date | Memo | Amount |
|------|------|------|--------|
| **RENTAL INCOME** | | | |
| **ARTECH** | | | |
| Deposit | 1/21/2004 | JANUARY | 10,575.00 |
| Deposit | 3/5/2004 | FEBRUARY | 10,575.00 |
| Deposit | 4/16/2004 | MARCH | 10,575.00 |
| Deposit | 5/7/2004 | APRIL | 10,575.00 |
| Deposit | 6/2/2004 | MAY | 10,575.00 |
| Deposit | 6/30/2004 | JUNE | 10,575.00 |
| General Journal | 6/30/2004 | TO OFFSET 2ND TR ESCALATION | 3,780.00 |
| Deposit | 7/30/2004 | JULY | 10,575.00 |
| General Journal | 8/1/2004 | TO OFFSET MONTHTLY 3RD YR ESCALATION | 319.50 |
| General Journal | 9/1/2004 | TO OFFSET MONTHTLY 3RD YR ESCALATION | 319.50 |
| Deposit | 9/15/2004 | AUGUST | 10,575.00 |
| Invoice | 9/15/2004 | RENT FOR OCTOBER 2004 | 10,500.00 |
| Invoice | 9/15/2004 | EXTRA RENT FOR SPRINKLERS | 35.00 |
| Invoice | 9/15/2004 | EXTRA RENT FOR WATER | 40.00 |
| Invoice | 9/15/2004 | REALTY ESCALATION | 1,991.68 |
| Invoice | 10/15/2004 | RENT FOR NOVEMBER 2004 | 10,500.00 |
| Invoice | 10/15/2004 | EXTRA RENT FOR SPRINKLERS | 35.00 |
| Invoice | 10/15/2004 | EXTRA RENT FOR WATER | 40.00 |
| Deposit | 10/19/2004 | SEPTEMBER | 10,575.00 |
| General Journal | 11/1/2004 | TO OFFSET MONTHTLY 3RD YR ESCALATION | 319.50 |
| Invoice | 11/15/2004 | RENT FOR DECEMBER 2004 | 10,500.00 |
| Invoice | 11/15/2004 | EXTRA RENT FOR SPRINKLERS | 35.00 |
| Invoice | 11/15/2004 | EXTRA RENT FOR WATER | 40.00 |
| General Journal | 12/1/2004 | TO OFFSET MONTHTLY 3RD YR ESCALATION | 319.50 |
| **Total ARTECH** | | | 133,949.68 |
| | | | |
| **AIDEN** | | | |
| Deposit | 1/14/2004 | JANUARY | 17,426.46 |
| Deposit | 2/6/2004 | FEBRUARY | 17,426.45 |
| Deposit | 3/2/2004 | MARCH | 17,426.45 |
| Deposit | 4/14/2004 | APRIL | 17,221.45 |
| Deposit | 5/3/2004 | MAY | 17,426.45 |
| Deposit | 5/18/2004 | JUNE | 17,426.00 |
| Deposit | 7/12/2004 | JULY | 17,426.45 |
| Deposit | 8/4/2004 | AUGUST | 34,978.21 |
| Deposit | 9/10/2004 | SEPTEMBER | 18,029.20 |
| Deposit | 10/12/2004 | OCTOBER | 18,029.20 |
| Invoice | 10/15/2004 | RENT FOR NOVEMBER 2004 | 17,824.20 |
| Invoice | 10/15/2004 | EXTRA RENT FOR SPRINKLERS | 25.00 |
| Invoice | 10/15/2004 | EXTRA RENT FOR GARBAGE | 40.00 |
| Invoice | 10/15/2004 | EXTRA RENT FOR PEST CONTROL | 40.00 |
| Invoice | 10/15/2004 | EXTRA RENT FOR WATER | 100.00 |
| Invoice | 11/15/2004 | RENT FOR DECEMBER 2004 | 17,824.20 |
| Invoice | 11/15/2004 | EXTRA RENT FOR SPRINKLERS | 25.00 |
| Invoice | 11/15/2004 | EXTRA RENT FOR GARBAGE | 40.00 |
| Invoice | 11/15/2004 | EXTRA RENT FOR PEST CONTROL | 40.00 |
| Invoice | 11/15/2004 | EXTRA RENT FOR WATER | 100.00 |
| **Total AIDEN** | | | 229,477.47 |
| | | | |
| **KATE SPADE** | | | |
| Deposit | 1/7/2004 | JANUARY | 8,669.62 |
| Deposit | 2/5/2004 | FEBRUARY | 8,669.62 |
| Deposit | 3/5/2004 | MARCH | 8,669.62 |
| Deposit | 4/6/2004 | APRIL | 8,669.62 |
| Deposit | 5/7/2004 | MAY | 8,669.62 |
| Deposit | 6/7/2004 | JUNE | 8,669.62 |
| Deposit | 7/2/2004 | JULY | 8,669.62 |
| Deposit | 8/5/2004 | AUGUST | 8,669.62 |
| Deposit | 9/2/2004 | SEPTEMBER | 8,669.62 |
| Deposit | 10/7/2004 | OCTOBER | 8,669.62 |
| Invoice | 10/15/2004 | RENT FOR NOVEMBER  2004 | 10,500.00 |
| Invoice | 10/15/2004 | EXTRA RENT FOR SPRINKLERS | 25.00 |
| Invoice | 10/15/2004 | EXTRA RENT FOR WATER | 40.00 |
| Invoice | 11/15/2004 | RENT FOR DECEMBER 2004 | 10,500.00 |

# 466 Broome Street of NYC, Inc.
## Rental Income
### January through December 2004

| Type | Date | Memo | Amount |
|------|------|------|--------|
| Invoice | 11/15/2004 | EXTRA RENT FOR SPRINKLERS | 25.00 |
| Invoice | 11/15/2004 | EXTRA RENT FOR WATER | 40.00 |
| Total KATE SPADE | | | 109,721.58 |
| | | | |
| UFO | | | |
| General Journal | 6/30/2004 | TO RCD 6 MO RENT | 15,000.00 |
| General Journal | 12/31/2004 | TO RCD RENT 6MO | 15,000.00 |
| Total UFO | | | 30,000.00 |
| | | | |
| Total RENTAL INCOME | | | 503,148.73 |
| | | | |
| TOTAL | | | 503,148.73 |

**EXHIBIT E**

For Richard --

    As recently discussed, I now put in writing, my intent to give to you One Million Dollars when I receive my portion of The Building monies. The monies represent part of my inclusion in The sale of The building - 466 Broome St. This will be your share due to The fact that you paid $1.00. to leave your portion to the situation which existed some years ago.

    These monies are a separate issue and have nothing to do with any monies in my estate. As you know, if there is any money in my estate, at my demise, these monies will be shared three ways. To Bob, to yourself, to Lorna.

                    Evelyn Brodey

* MY MOTHERS LETTER TO ME ... SHE GIVES MC THIS A COPIE OF SAID LTTER *

# EXHIBIT F

**EVELYN BRODY**
102 West 75th Street
New York, NY 10023

December 11, 2006

Richard Brody
78 Flintlock Lane
Medfield, MA 02052

Dear Richard:

After discussion with Bruce Diamond, the accountant, and Stephen Zeche, the lawyer, I must correct an unintentional, yet significant, error in my December 5 letter to you. A portion of the net proceeds of sale of 466 Broome Street – approximately 27% – after payment of all expenses and taxes, will be paid to the credit shelter trust under your father's Will which continues for my lifetime. All of the net income of the trust is payable to me annually. The Will provides that, at my death, the principal assets of the credit shelter trust, other than shares of UFO stock, are to be distributed in equal shares to you, Bob and Lorna (free of estate taxes and gift taxes).

Unfortunately, I misunderstood how the net proceeds of sale are to be distributed at the Closing: nothing will be paid to me directly because I no longer own any shares of 466 Broome Street of New York City, Inc. I previously gave you, Bob and Lorna all of my shares of stock of the Corporation.

As you know, my own funds are quite limited and I simply am unable to give you $1 million. *from my own funds.*

With love,