UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
RICHARD BRODY,

                          PLAINTIFF,          Index No.: 07 CIV 7981 (RJS)

          vs

LORNA BRODY, ROBERT BRODY, EVELYN
BRODY, 466 BROOME STREET OF NEW YORK
CITY, INC.,

                          DEFENDANTS.

-----------------------------------------------------------------X


## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ROBERT BRODY'S MOTION TO DISMISS


LAZARUS & LAZARUS, P.C.

*Attorneys for Defendant*

ROBERT BRODY

240 Madison Avenue

New York, New York 10016

212.889.7400

## TABLE OF CONTENTS

I.    INTRODUCTION                                                                    1

II.   PRELIMINARY STATEMENT                                                           1

III.  STATEMENT OF FACTS                                                             2

IV.   PLAINTIFF'S COMPLAINT MUST BE DISMISSED FOR FAILURE
      TO STATE A CLAIM PURSUANT TO FED. R. CIV. P. 12 (b)(6)                         5

      1.   Standard Governing Fed. R. Civ. P.12(b)(6) Motion                         5
      2.   Statute of Limitations Bars the Assertion  of All of
           Plaintiff's Causes of Action                                             6

V.    EVEN IF THE STATUTE OF LIMITATIONS IS TOLLED,
      PLAINTIFF'S FRAUD CLAIM AND FRAUDULENT
      INDUCEMENT CLAIMS SHOULD BE DISMISSED WITH
      PREJUDICE AS TO ROBERT                                                        10

      1.   Standard Governing Fed. R. Civ. P. 9(b) Motions                          10

VI.   EVEN IF THE STATUTE OF LIMITATIONS IS TOLLED,
      PLAINTIFF'S CLAIM FOR CORPORATE WASTE MUST BE
      DISMISSED                                                                     12

      1.   A Corporate Waste Claim Must Be Brought by a
           Derivative Action by a Plaintiff Who is a Stockholder
           at the Time of the Wrong and at the Commencement
           of the Action                                                           12

VII.  EVEN IF THE STATUTE OF LIMITATIONS IS TOLLED,
      PLAINTIFF'S CLAIM FOR UNJUST ENRICHMENT AS AGAINST
      ROBERT MUST BE DISMISSED                                                     14

      1.   Richard's Unjust Enrichment Claim Against Robert
           Because as Between Robert Engaged No Unjust
           Conduct as to Richard                                                   14

VIII  CONCLUSION                                                                    15

### TABLE OF AUTHORITIES

<u>CASES</u>                                                                 <u>PAGE</u>

*Armstrong v. McAlpin,*
    699 F. 2d 79, 88 (2d Cir. 1983)                                        7

*ATSI Communications, Inc. v. Saar Fund, Ltd.,*
    493 F. 3d 87, 96 (2d. Cir. 2007)                                       6

*Barr Laboratories, Inc. v. Quantum Pharmics, Inc.*
    827 F. Supp. 111 at 119                                                14

*Bell At. Corp. v. Twombly*
    U.S., 127 S. Ct. 1955, 1965, 167 L.Ed. 2d 929 (2007)                   6

*Campaniello Imps. Ltd. v. Saporiti Italia S.p.A.,*
    117 F. 3d 655, 663 (2d Cir. 1997)                                      11

*Conley v. Gibson,*
    355 U.S. 41, 45-46, 78 S. Ct. 99 (1956)                                6

*Desiano v. Warner-Lambert Co.,*
    326 F. 3d 339, 347 (2d Cir. 2003)                                      6

*DiVittorio v. Equidyne Extractive Indus., Inc.,*
    822 F. 2d 1242, 1247, (2d Cir. 1987)                                   11

*Dolmetta v. Unitah Nat'l Corp.,*
    712 F. 2d 15, 20 (2d Cir. 1983)                                        14

*Grandon v. Merrill Lynch & Co., Inc.,*
    147 F.3d 184, 188 (2d Cir. 1998)                                       5

*Hack v. President & Fellows of Yale College,*
    237 F. 3d 81, 88 (2d Cir. 2000)                                        5

*In Re Fischer,*
    308 B.R. 631, 654                                                      6

*Klein v. H.N. Whitney, Goadby & Co.,*
    341 F. Supp. 699 (S.D.N.Y. 1971)                                       10

*Kravetz v. Brukenfeld,*
    591 F. Supp 1383, 1386                                                 11

*Lewis v. S.L. & E., Inc.,*
    (1980, CA2 NY) 629 F. 2d 764; 746 F 2d 141; 831 F 2d 37           12

*McGrath v. Hilding,*
    41 N.Y. 2d 625, 629; 394 N.Y.S. 2d 603           14

*O'Brien v. Nat'l Prop. Analysts Partners,*
    936 F. 2d 674, 676 (2d Cir. 1991)           11

*Rogal v. Wechsler,*
    522 N.Y.S. 2d 123 (N.Y. A.D 1st Dept. 1987)           7

*Ross v. A.H. Robins Co.,*
    607 F. 2d 545, 557           11

*Schlaifer Nance & Co. v. Estate of Warhol,*
    119 F. 3d 91 (2d Cir 1997)           11

*Sorin v. Shahmoon Industries, Inc.,*
    30 Misc. 2d 408, 220 N.Y.S., 2d 760           12

*Ying Jing Gan v. City of New York,*
    996 F2d 522, 534 (2d Cir. 1993)           6, 12

## RULES AND STATUTES

*Fed. R. Civ. P. 12 (b)(6)*           1

*Fed. R. Civ. P. 9(b)*           1, 10

*New York Business Corporation Law*
    §626(b)           13

*N. Y. Civ. Proc.*
    213 (1), (7) and (8)           6

*1 Weinstein, Korn & Miller, New York Civil Practice*
    213.25 at 2-382           7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
RICHARD BRODY,

                               PLAINTIFF,                Index No.: <u>07 CIV 7981 (RJS)</u>

           *vs*

LORNA BRODY, ROBERT BRODY, EVELYN
BRODY, 466 BROOME STREET OF NEW YORK
CITY, INC.,

                             DEFENDANTS.

-----------------------------------------------------------------X

## <u>MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT<br>ROBERT BRODY'S MOTION TO DISMISS</u>

### I.  Introduction

Defendant Robert Brody ("Robert") respectfully submits this Memorandum of Law in Support of Robert's Motion to Dismiss Plaintiff Richard Brody's ("Richard") Complaint (the "Complaint") with prejudice and without leave to amend pursuant to *Fed. R. Civ. P.* 12(b)(6) for failure to state a claim upon which relief can be granted; and/or to dismiss the Complaint, with prejudice and without leave to amend, pursuant to *Fed. R. Civ. P.* 9(b).

### II. Preliminary Statement

Richard commenced this action in September, 2007 against his brother Robert, Richard and Robert's sister, Lorna Brody ("Lorna"), the Brody sibling's mother, Evelyn Brody ("Evelyn") and a family held close corporation, the defendant 466 Broome Street of New York City, Inc. (the "Corporation").

The five causes of action set forth in Richard's Complaint have their genesis in a September

1995 stock sale transaction in which Richard sold his entire interest in the Corporation to the Corporation for $1.00.

The five causes of action set forth in Richard's Complaint are barred by the Statute of Limitations, and, to the extent the Complaint alleges claims sounding in fraud, dismissible as to Robert for failure to plead with the requisite particularity. As to Richard's cause of action for corporate waste, among other reasons, because Richard is no longer a shareholder of the Corporation, Richard has no standing to assert the claim, which, in any event, is a derivative claim, not properly asserted on behalf of an individual. Richard's unjust enrichment claim as to Robert should fall with the dismissal of Richard's fraud and corporate waste claims; the unjust enrichment claim should also be dismissed as to Robert, because Robert engaged in no "transaction" of any kind with Richard, let alone a "transaction" in which Robert was unjustly enriched.

### III. Statement of Facts

The following facts are from Richard's Complaint.

Leo Brody ("Leo"), Evelyn's husband, and the father of Richard, Robert and Lorna bought the building (the "Building"), located at 466 Broome Street, in the heart of Soho, which was the sole asset of the Corporation, in 1976. ¶1; ¶7.

A year prior to the purchase of the Building, "after suffering through a difficult relationship with his family for years", Richard resigned Richard's employment from "UFO", a wholesale clothing company, also owned by Leo. ¶14; ¶16.

Prior to Richard's resignation from UFO, Richard, Robert, Lorna and Evelyn were all

-2-

"employed ...in various capacities at UFO and other family owned businesses." ¶15.

After resigning from UFO, Richard moved to Massachusetts, where Richard remained "largely estranged from his family" (¶16), although in 1984 Richard, at Leo's request, returned to New York to assist with family business. ¶16.

Leo died in 1988. ¶1; ¶19. Richard, 54 years of age at the commencement of this action (¶6) was 34 years old when Leo died.

Richard inherited his 13.333 shares ("Richard Shares") of the Corporation from Leo. (¶1)[1].

The Complaint sets forth the following:

-In the fall of 1993, when Richard was 39, Evelyn phoned Richard, and demanded $17,000.00 within 24 hours for his purported share of the Corporation's taxes. Evelyn told Richard that the Corporation would become insolvent if Richard failed to pay. Richard paid the money. ¶20

-In winter 1994, Evelyn again phoned Richard, asked for $10,000.00 in 48 hours for his share of the Corporation's taxes. Evelyn again informed Richard of the Corporation's insolvency if Richard didn't pay. Richard paid the money. ¶21

-In March 1994, Evelyn phoned Richard and informed Richard that the Corporation needed $8,500.00 to prevent foreclosure. Richard paid the money. ¶22

-In approximately 1995, Evelyn phoned Richard and informed Richard that the Corporation needed $8,500 for Richard's portion of the taxes. Richard paid. ¶23

-Between 1993 and 1995, Evelyn informed Richard that the Corporation was on the "precipice" of bankruptcy. ¶24.

---

[1] The Complaint, however, also alleges "At some point...", Richard was made a shareholder of the Corporation (¶18), the inference being that Richard was a shareholder of the Corporation prior to Leo's death.

At an unspecified date, the Complaint alleges that Richard told Evelyn that Richard could no longer afford to bail out the nearly bankrupt Corporation on short notice. Evelyn told Richard that "Defendants" would buy the Richard Shares for $1. ¶25; ¶26

In September 1995, Richard sold the Richard Shares to the Corporation for $1.00 "after *his mother*, [Evelyn], represented that the Corporation was losing money and almost bankrupt". (¶1, emphasis supplied).

The offer and sale of the Richard Shares is memorialized in two writings, each signed by Richard, annexed to the Complaint as Exhibit A and Exhibit B. ¶27; ¶28. Neither writing is signed by or addressed to Robert.

Exhibit A to the Complaint was dictated to Richard by Evelyn.¶27.

Exhibit B to the Complaint was drafted by Lorna. ¶28

Even after Richard's sale of the Richard Shares to the Corporation, Evelyn continued to inform Richard that the Corporation was in dire financial condition. ¶30.

In November, 2006 Robert told Richard about Robert's petition (the "Petition") seeking the dissolution of the Corporation, which Robert filed in New York State Supreme Court in February, 2006. ¶31; ¶32. In December, 2006, Richard learned that the Corporation planned to sell the Building for $17,600,000.00. ¶33.

Richard learned of Defendants'"misrepresentations" and "self dealing" and breaches of fiduciary duty from the Petition. ¶4; ¶34. The "misrepresentations" and "self dealing" emanate from a) Evelyn's misrepresentations as to the "value" of the Corporation (¶4); and b) alleged self dealing by the Corporation's grant of below market "leases" to UFO for its business and to Robert for a "home". ¶4.

The allegedly below market UFO Lease, referred to in the Petition, and upon the discovery

of which Richard predicates a portion of his "self dealing" claim, however, was not entered into until October, 1997, two years after Richard's September 1995 sale of the Richard Shares to the Corporation. See Complaint Exhibit D (the Petition) at Petition Exhibit "I".

Similarly, Robert's alleged below market "lease" [2] for Robert's family home at the Building, did not begin until 1995, i.e., approximately the date of the Richard Share purchase by the Corporation, but after alleged misrepresentations of "value" made by Evelyn to Richard. See Complaint Exhibit D at ¶63.

In April 1997, the Building was sold by the Corporation for $19,500,000.00 (¶37), and the proceeds distributed to the then shareholders of the Corporation, Robert, Lorna and the Trust of Leo Brody. ¶39.

Prior to the sale of the Building, Evelyn wrote two letters to Richard with respect to the then prospective sale. ¶35; ¶36. The letters are attached as Exhibit E and Exhibit F to the Complaint.

### IV. Plaintiff's Complaint Must Be Dismissed For Failure To State a Claim Pursuant to Fed. R. Civ. P. 12(b)(6)

1.        Standard Governing Fed. R. Civ. P. 12(b)(6) Motions:

The Court has authority to dismiss a suit for failure to state a claim upon which relief can be granted if the complaint clearly demonstrates that the plaintiff cannot prove any set of facts that would entitle it to relief. *Hack v. President & Fellows of Yale College* 237 F. 3d 81, 88 (2d Cir. 2000).

In reviewing a Rule 12 (b) (6) motion, courts must "accept as true the factual allegations made in the complaint and draw all inferences in favor of the pleader." *Grandon v. Merrill Lynch*

---

[2] In fact, the Petition alleges Evelyn and Lorna's threat to evict Robert and his family from the building *because* there was no lease.

*& Co., Inc.,* 147 F.3d 184, 188 (2d Cir. 1998) (citing *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1174 (2d Cir 1993)).

However, "legal conclusions, deductions or opinions couched as factual allegations are not given a presumption of truthfulness." *Ying Jing Gan v. City of New York,* 996 F.2d 522, 534 (2d Cir. 1993) (quoting *Moore's Federal Practice* ¶ 12.07 [2-5], at 12-63 to 12-64 (2d ed. 1993)). The complaint may only be dismissed when "it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S. Ct. 99 (1956); see also, *Desiano v. Warner-Lambert Co.,* 326 F. 3d 339, 347 (2d Cir. 2003).

The Court may consider any written instruments attached to the complaint upon which plaintiff relied in bringing the suit. *ATSI Communications, Inc. v. Saar Fund, Ltd.* 493 F. 3d 87, 96 (2d. Cir 2007). "To survive dismissal, the plaintiff must prove the grounds upon which his claim rests through factual allegations sufficient "to raise a right to relief above the speculative level." *Bell At. Corp. v. Twombly* ---U.S. ---, 127 S. Ct. 1955, 1965, 167 L.Ed. 2d 929 (2007). *ATSI,* 493 F. 3d at 96.

2.    The Statute of Limitations Bars the Assertion of All of Plaintiff's Causes of Action:

The statute of limitations on all of Richard's claims is six years. *N.Y. Civ. Proc.* §§213 (1), (7) and (8).

A fraud case of action arises upon the making of a misrepresentation causing detrimental reliance. *In Re Fischer* 308 B.R. 631, 654 (citing *Block v. First Blood Associates* 743 F. Supp. 194, 198 (S.D.N.Y. 1990). "Causes of action for fraud are governed by two separate alternative limitations periods: six years from the commission of the fraud or two years from the actual or imputed discovery of the fraud, whichever is longer. CPLR §213, subd. 8 and §203 (f);..." *In re*

*Fisher* 308 B.R. at 655.  A cause of action for fraudulent inducement arises upon execution of the contract. *Rogal v Wechsler* 522 N.Y.S. 2d  123 (N.Y. A.D 1st Dept. 1987).

"The two year discovery rule for assertion of a fraud claim may begin to run before a plaintiff actually discovers that a fraud has been committed.  If a plaintiff could have with reasonable diligence discovered the fraud at an earlier date, the two year limitations period begins to run on the date the fraud could have been discovered." *1 Weinstein, Korn & Miller, New York Civil Practice*, ¶ 213.25 at 2-382" cited at *In re Fisher*  308 B.R. at 655. See *Armstrong v. McAlpin* 699 F.2d 79, 88 (2d Cir. 1983) holding that "where the circumstances are such as to suggest to a person of ordinary intelligence the probability that he has been defrauded, a duty of inquiry arises, and if he omits that inquiry when it would have developed the truth, and shuts his eyes to the fact which call for investigation, knowledge of the fraud will be imputed to him" .

The facts, as set forth in Richard's Complaint, demonstrate without any doubt, that he could have discovered the alleged fraud within the time to bring the suit had he used reasonable diligence.

Richard's Complaint recites his resignation from the UFO family business "after suffering through a difficult relationship with his family for years."  Upon Richard's resignation, Richard remained "largely estranged from his family."

Irrespective of this pre-history to the September, 1995 sale of the Richard Shares to the Corporation, Richard on four separate occasions over approximately two years, *after* resigning from UFO, and during the period of his family estrangement, advanced moneys to the Corporation, solely on Evelyn's oral demand and simultaneous alleged false advice that the Corporation was on the brink of insolvency, at risk of foreclosure or in need of moneys to pay taxes.  Even after the sale of the

Richard Shares to the Corporation, the Complaint avers that Evelyn continued to inform Richard of the Corporations "dire financial condition", yet Richard made no inquiry of any kind at any time before or after the sale of the Richard Shares.

The Complaint alleges no act or conduct of any kind whatsoever that Richard took at *any* time to investigate the alleged insolvency, foreclosure, or tax funding requirements of the Corporation. Although Richard now alleges, without any factual predicate, "that neither Evelyn, Lorna, nor Robert paid their share of the Corporation's taxes out of their personal funds (at ¶29). Richard fails to allege any request at any time before or after the sale of the Richard Shares by Richard for evidence, proof or even verbal assurance that Evelyn, Robert, or Lorna were paying or had paid "their share" of the Corporation taxes.

Richard's pre and post sale inquiry omissions are more incredible in view of Richard's admission of a pre and post sale history of familial estrangement, and Richard's own stated financial condition at the time of Richard's advances to the Corporation.

Richard avers that the ultimate catalyst to Richard's sale of the Richard Shares was that "after liquidating most of his savings" [to bail out the Corporation](Complaint ¶25), Richard "could no longer afford to continually bail out the Corporation on short notice, particularly since the Corporation was purportedly near bankruptcy."

The offer to buy the Richard Shares followed Richard's informing Evelyn of Richard's inability to continually "bail out" the Corporation.  Complaint ¶25 and ¶26.

Richard's informing Evelyn of Richard's financial inability "induced" Evelyn's offer to purchase, which Richard voluntarily accepted.   Richard pleads no prior demand, request, or

conversation related to a purchase of the Richard Shares.

Richard avers no inquiry to anyone concurrent with the sale of the Richard Shares to the Corporation, even though the sale of the Richard Shares to the Corporation was for the obviously nominal price of $1.00.

The factually deficient fraudulent inducement claims may not have accrued until the September 1995 sale of the Richard Shares to the Corporation. However, the facts, as pleaded, overwhelmingly demonstrate that Richard could have discovered the alleged fraud at or shortly after the sale had he exercised "reasonable diligence" at any time before or after the sale, a transaction Richard "induced" the Corporation to enter into.

The Complaint alleges no request at any time made by Richard for reimbursement of the money's allegedly paid upon Evelyn's demands, even though the advances depleted "most of [Richard's] savings" and even though no allegation is made that Richard was unaware at any time in the one dozen years following the sale of the Richard Shares that the Building remained titled in the Corporation, or that UFO and Robert occupied space at the Building.  The Complaint alleges no inquiry by Richard at any time for the manner, basis or financial rationale for the agreed Richard Share sale price of $1.00.

After the sale of the Richard Shares to the Corporation, Evelyn continued to inform Richard of the Corporation's "dire financial condition"; yet  the Complaint alleges no post-sale inquiry by Richard of any kind, no post-sale demand by Richard for reimbursement of moneys advanced, and no post sale demand by Richard for proof that Evelyn, Robert or Lorna had made their "pro rata" contribution for payment of the Corporation's taxes.

Evelyn's alleged post sale assertions of the Corporation's financial distress made in connection with Building, located in New York City's Soho district, ring false. More to the point, the unquestionable, well publicized and public rise of the Soho real estate market during the period in question, would surely have triggered a "reasonable man" to make post sale inquiry of Evelyn's post sale distress claims, particularly in view of the fact that Richard's pre sale "advances" had substantially liquidated Richard's savings. Surely, a "reasonable man" in depleted financial circumstances would have inquired as to "why" no reimbursement was forthcoming.

Richard at the relevant times omitted any inquiry, "shut his eyes" to facts calling for an investigation, and therefor knowledge of the alleged fraud must be imputed to him. The "facts" as averred "surely would have prompted a man of reasonable diligence to conduct further investigations", *Klein v. H.N. Whitney, Goadby & Co.* 341 F. Supp. 699 (S.D.N.Y. 1971).

The Complaint's exhibits, in fact, affirmatively demonstrate that neither UFO's lease, nor Robert's occupancy, began until after the sale of the Richard Shares to the Corporation. These "facts" do not support Richard's "fraud" or "fraudulent inducement" claims; to the contrary, their assertion in the Complaint irrespective of attached documents disproving Richard's claims affirmatively demonstrates that Richard's fraud based claims with respect to a transaction Richard induced and voluntarily entered into are no more than speculative.

Richard's claims are, therefore, irrevocably barred by the applicable Statute of Limitations.

### V. Even if the Statute of Limitations is Tolled, Plaintiff's Fraud Claim and Fraudulent Inducement Claims Should be Dismissed With Prejudice as to Robert.

1. Standard Governing Fed. R. Civ. P 9(b) Motions

FED. R. CIV. P. 9(b) states:

> "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."

Rule 9 (b) is designed to provide a defendant with fair notice of the plaintiff's claim, safeguard the defendant's reputation from improvident charges of wrongdoing and protect against strike suits. _Campaniello Imps., Ltd. v. Saporiti Italia S.p.A._, 117 F. 3d 655, 663 (2d Cir. 1997); _O'Brien v. Nat'l Prop. Analysts Partners_ 936 F. 2d 674, 676 (2d Cir. 1991); _DiVittorio v. Equidyne Extractive Indus., Inc._ 822 F. 2d 1242, 1247, (2d Cir 1987).

The Complaint must allege with some specificity the act or statements constituting the fraud, or in the case of collusion, the collusion. _Kravetz v. Brukenfeld_, 591 F. Supp 1383, 1386, citing _Decker v. Massey-Ferguson, Ltd._,681 F.2d 111, 114; _Ross v. A.H. Robins Co._ 607 F. 2d 545, 557.

On its face, and as to Robert, Richard's Fraudulent Inducement Claim (the First Claim for Relief in the Complaint) and Fraud Claim (the Second Claim for Relief in the Complaint) must be dismissed. Similarly, Richard's breach of fiduciary claim (the Third Claim for Relief), which is predicated on "misrepresenting the financial health of the Corporation" must similarly be dismissed.

The first 40 paragraphs of the Complaint constituting the "factual" basis of Richard's claims set forth no false representation, wrongful action or deceitful practice by Robert. Inasmuch as no such averments are made, there are no allegations of Robert's scienter.

For a plaintiff to prevail on a claim of fraud, the plaintiff must prove by clear and convincing evidence, a material misrepresentation by the defendant, made with knowledge of its falsity, with

the intent to defraud, and the reasonable reliance on the part of the plaintiff that causes damage to the plaintiff. *Schlaifer Nance & Co. v. Estate of Warhol* 119 F. 3d 91 (2d Cir 1997).

In the absence of any allegation in the "fraud" claims of Richard's Complaint as to Robert of the necessary elements to prevail upon a fraud claim, the "fraud" claims, including the breach of fiduciary duty claim, must be dismissed. The Complaint is absent any factual allegation of any specific or even general misrepresentation, wrongful action or deceit made or practiced by Robert.

To the extent that the "specifics" of the first 40 paragraphs of the Complaint, where the only "actor" is Evelyn, are replaced by the generalized allegations of the various "claims" for relief, wherein Robert is but one of the undifferentiated targeted "Defendants", the claims nevertheless fail. See *Ying Jing Gan v. City of New York*, 996 F.2d 522, 534 (2d Cir. 1993) (quoting *Moore's Federal Practice* ¶ 12.07 [2-5], at 12-63 to 12-64 (2d ed. 1993)) (supra) holding that conclusions, deductions or opinions couched as factual allegations are not given a presumption of truthfulness.

## VI. Even if the Statute of Limitations is Tolled, Plaintiff's Claim for Corporate Waste Must be Dismissed

1. A Corporate Waste Claim Must Be Brought by a Derivative Action by a Plaintiff Who is A Stockholder at the Time of the Wrong and at the Commencement of the Action

A corporate waste claim is a claim for wrong to the corporation. The remedy for a corporate waste claim is through a stockholder's derivative action. There is no individual stockholder right of action even though the individual stockholder may be indirectly damaged. See *Lewis v. S.L. & E., Inc.* (1980, CA2 NY) 629 F.2d 764, appeal after remand on other grounds (CA2 NY) 746 F2d 141 and appeal after remand on other grounds (CA2 NY) 831 F2d 37 citing at 769 *Empleton v. D'Elia Gemstones Corp.* 46 A.D. 2d 751; 360 N.Y.S. 2d 683 ("The law is

well settled than an individual may not bring a direct action solely on his behalf for a wrong committed against a corporation of which he is a shareholder." *D'Elia Gemstones Corp.* at 46 A.D.2d 751,752).

A stockholder derivative action plaintiff must have been a stockholder at the time of the wrong and at the commencement of the action. *New York Business Corporation Law* §626 (b). A stockholder's derivative suit cannot be maintained by one has transferred or lost title to his stock. *Sorin v. Shahmoon Industries, Inc.* 30 Misc. 2d 408, 220 N.Y.S. 2d 760 citing *Harris v. Averick* 24 Misc. 2d 1039; 204 N.Y.S. 2d 372. ("…it is necessary [in an action such as this] for plaintiff to show, in order that she may recover, that she was a 'stockholder at the time of the transaction of which [s]he compliant'***as well the time of the commencement of the action***. *Harris* 34 Misc. 2d 1039,1040; 204 N.Y.S. 2d 372, 373).

That Richard has not brought a derivative action is self evident. The Complaint further fails because Richard is not now, nor was Richard at the commencement of the action, a stockholder in the Corporation.

Assuming that the "corporate waste" complained of was the alleged below market UFO lease, the same was not entered into until 1997, two years after the sale of the Richard Shares. See Complaint Exhibit D, Robert's Petition at Petition Exhibit "I". Thus, with respect to this alleged "corporate waste", Richard was similarly not a stockholder at the date of the "wrong".

Finally, the alleged below market "occupancy" by Robert at the Building was not subject of any written lease or other commitment by the Corporation to Robert at any time and was, at best, of short duration at the date of the sale of the Richard Shares to the Corporation. Indeed,

these very circumstances are what precipitated Robert's Petition to the New York State Supreme

Court. In these circumstances, Robert's occupancy, *without a lease from the Corporation* at the

date of the sale of the Richard Shares, was not "waste" such the Richard was a stockholder at the

date of an alleged "wrong".

## VII. Even if the Statute of Limitations is Tolled, Plaintiff's Claim for Unjust Enrichment as Against Robert Must be Dismissed

1.  Richards Unjust Enrichment Claim Against Robert Because as Between Robert Engaged in No Unjust Conduct as to Richard.

Assuming *arguendo* that the factual and legal basis for Richard's Unjust Enrichment Claim

(the Fifth Claim for Relief) do not fail with Richard's fraud claims, and corporate waste claim (and

do not fail because of the Statute of Limitations), it must nonetheless fail as to Robert, because

Robert engaged in no "transaction" with Richard with respect to the sale of the Richard Shares.

Under New York law, an unjust enrichment claim requires that a) the defendant be enriched;

and b) the enrichment was at plaintiff's expense; and c) the circumstances were such that equity and

good conscience require defendant to make restitution. *Dolmetta v Unitah Nat'l Corp* 712 F.2d 15,

20 (2d Cir. 1983).

"The law is adamant. Enrichment alone will not suffice to invoke the remedial powers of a

court of equity. Critical is that under the circumstances and as between the two parties to the

transaction the enrichment be unjust" *McGrath v. Hilding* 41 N.Y. 2d 625, 629; 394 N.Y.S. 2d 603.

See also *Barr Laboratories, Inc. v Quantum Pharmics, Inc.* 827 F. Supp. 111 at 119 citing *Naimoli*

*v. Massa* 81 Misch. 2d 431, 434, 366 N.Y.S. 2d 573,577 (N.Y. City Ct. 1975), "The general rule [of

an unjust enrichment claim] is that where a person has received a benefit from another he is liable

to pay only…if the circumstances of [the] receipt or retention [of the benefit] are such that, that between two persons, it is unjust for him to retain it."

Richard has alleged no conduct or circumstance as between Richard and Robert at the date of the sale of the Richard Shares, or at any time thereafter, such that Robert's receipt of his pro rata share of the proceeds of the Building sale in 2007-a dozen years after the sale of the Richard Shares to the Corporation- are "unjust". Richard sold his shares to the Corporation, not to Robert. No allegation is made by Richard that the sale was other than voluntary. The voluntary sale by Richard, assuming the Complaint facts to be true, was at the instigation of Evelyn, with the participation of Lorna. Robert played no role in the Richard Sale transaction, and thus, as between Richard and Robert, no claim for unjust enrichment lies.

## V. CONCLUSION

For all the reasons set forth herein, it is respectfully requested that *(i)* the Motion of Defendant, Robert Brody be granted for an order dismissing the Complaint of the Plaintiff, Richard Brody, with prejudice and without leave to amend pursuant to *Fed. R. Civ. P.* 12 (b) (6) for failure to state a claim upon which relief can be granted; *(ii)* and/ or the Motion of Defendant, Robert Brody be granted for an order to dismiss the Complaint, with prejudice and without leave to amend, pursuant to *Fed. R. Civ. P.* 9 (b); and *(iii)* for such other, further and different relief as this Court deems just and proper.

-15-

Respectfully submitted this 31ˢᵗ day of January, 2008.

LAZARUS & LAZARUS, P.C.
*Attorneys for Defendant*
ROBERT BRODY

By: _____

HARLAN M. LAZARUS (HML-0268)
240 Madison Avenue, 8ᵗʰ Floor
New York, New York 10016
(212) 889-7400

*TO:*  **RAND ROSENZWEIG RADLEY & GORDON, LLP.**
800 Third Avenue, 26ᵗʰ Floor
New York, New York 10022
**Attention: CHARLES ROSENZWEIG**


**SHEINDLIN & SULLIVAN, LLP**
350 Broadway, 10ᵗʰ Floor
New York, New York 10013
**Attention: JOSEPH J. SULLIVAN III, ESQ.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
RICHARD BRODY,

                         PLAINTIFF,                Index No.: <u>07 CIV 7981 (RJS)</u>

        *vs*

LORNA BRODY, ROBERT BRODY, EVELYN
BRODY, 466 BROOME STREET OF NEW YORK
CITY, INC.,

                         DEFENDANTS.

-------------------------------------------------------------X

## <u>MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ROBERT BRODY'S MOTION TO DISMISS</u>

LAZARUS & LAZARUS, P.C.
*Attorneys for Defendant, Robert Brody*
240 Madison Avenue, 8th Floor
New York, New York 10016
Tel. (212) 889-7400