**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
RICHARD BRODY,                                  :
                                                             :   07 CV 7981 (RJS)
                                     Plaintiff, :
                                                             :
                        v.                          :
                                                             :
LORNA BRODY, ROBERT BRODY,         :
EVELYN BRODY, and 466 BROOME  :
STREET OF NEW YORK CITY, INC.,     :
                                                             :
                                  Defendants.  :
------------------------------------------------------------x

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

RAND ROSENZWEIG RADLEY
& GORDON, LLP
*Attorneys for Defendants*
  *Lorna Brody, Evelyn Brody and 466*
  *Broome Street of New York City, Inc.*
50 Main Street, 12th Floor
White Plains, N.Y. 10606

TABLE OF CONTENTS

|  | Page |
|---|---|
| PRELIMINARY STATEMENT…………………………………..………… | 1 |
| NATURE OF THE ACTION………………………………………………… | 1 |
| ARGUMENT………………………………………………………….……… | 4 |
|     POINT 1: THE STATUTE OF LIMITATIONS HAS RUN ON EACH CLAIM BROUGHT AGAINST DEFENDANTS…………………………. | 4 |
|     POINT II: FRAUD CAUSES OF ACTION ARE NOT TOLLED BY NEW YORK'S TWO-YEAR DISCOVERY RULE…..……………..…… | 6 |
|         A.    As a Matter of Law, Plaintiff Cannot Meet the Burden of Establishing Entitlement to the Two-Year Discovery Rule……………………………………………………..…….. | 7 |
|         B.    Plaintiff's Inaction Precludes Application of Discovery Rule to His Fraud Claims…………………………….…… | 9 |
| CONCLUSION………………………………………………………………… | 13 |

## TABLE OF AUTHORITIES

<u>Federal Cases</u>                                                               <u>Page</u>

*Armstrong v. McAlpin*, 699 F.2d 79 (2d Cir. 1983) ....................... 4, 6, 7, 8, 11

*Dodds v. Cigna Securities, Inc.*, 12 F.3d 346 (2d Cir. 1993),
 cert. denied, 511 U.S. 1019, 114 S.Ct. 1401, 128 L.Ed.2d 74 (1994) ......... 7

*Foxley v. Sotheby's Inc.*, 893 F. Supp. 1224 (S.D.N.Y. 1995) ..................... 7, 8

*Golden Pacific Bancorp* v. FDIC, 273 F.3d 509 (2d Cir. 2001) .................. 4, 5

*Guilbert v. Gardner*, 480 F.3d 140 (2d Cir. 2007) ....................... 8

*Klein v. Bower*, 421 F.2d 338 (2d Cir. 1970) ................................. 4, 10

*Lord Day Lord v. Socialist Republic of Vietnam*,
 134 F. Supp. 2d 549 (S.D.N.Y. 2001) ........................................... 5

*Malmsteen v. Berdon, LLP*, 477 F. Supp. 2d 655 (S.D.N.Y. 2007) .............. 4

*Old Republic Insurance Co. v. Hansa World Cargo
 Service, Inc.*, 51 F. Supp. 2d 457 (S.D.N.Y.1999) ....................... 7, 11

*Radin v. Albert Einstein College of Medicine of Yeshiva University*,
 2005 WL 1214281 (S.D.N.Y.) ................................................... 11

*Satterwhite v. The Image Bank, I*nc., 48 U.C.C. Rep. Serv.2d 1307,
 2002 WL 31098496 (S.D.N.Y.) ................................................. 9, 11

*Talmadge v. United States Shipping Board*, 54 F.2d 240 (2d Cir. 1931) ..... 10

*Von Hoffman v. Prudential Ins. Co.*, 202 F. Supp. 2d 252
 (S.D.N.Y. 2002) ................................................................. 5, 6

*Wood v. Carpenter*, 101 U.S. 135, 143, 25 L.Ed. 807 (1879) ..................... 7

| State Cases | Page |
|---|---|
| *Blake v. Blake*, 252 A.D.2d 337, 638 N.Y.S.2d 632 (1st Dept. 1996) | 5, 6 |
| *Board of Managers of Society Hill II v. K. Hovnanian Companies of New York, Inc.*, 271 A.D.2d 388, 705 N.Y.S.2d 633 (2d Dept. 2000) | 11 |
| *City of New York v. Eisen*, 226 A.D.2d 244, 641 N.Y.S.2d 257 (1st Dept. 1996) | 9 |
| *Congregation Yetev Lev D'Satmar, Inc. v. 26 Adar N.B. Corp.*, 192 A.D.2d 501, 596 N.Y.S.2d 435 (2d Dept. 1993) | 5 |
| *Fandy Corp. v. Lung-Fong Chen*, 262 A.D.2d 352, 691 N.Y.S.2d 572 (2d Dept. 1999) | 5 |
| *Garlick v. Tarenzi*, 152 A.D.2d 721, 544 N.Y.S.2d 176 (2d Dept. 1989) | 9 |
| *Georgiou v. Panayia of the Mountains Greek Orthodox Monastery, Inc.*, 16 A.D.3d 998, 792 N.Y.S.2d 667 (3d Dept. 2005) | 9, 11 |
| *Global Financial Corp. v. Triarc Corp.*, 93 N.Y.2d 525, 693 N.Y.S.2d 479 (1999) | 5 |
| *Grasso v. Grasso*, 45 A.D.3d 1022, 845 N.Y.S.2d 182 (3d Dept. 2007) | 8 |
| *Higgins v. Course*, 147 N.Y. 411, 42 N.E. 6 (1895) | 7, 9 |
| *In re Blake*, 282 A.D.2d 905, 723 N.Y.S.2d 563 (3rd Dept. 2001) | 9, 11 |
| *In re Piccillo*, 19 A.D.2d 1087, 797 N.Y.S.2d 236 (4th Dept. 2005) | 5 |
| *Motor Vehicle Acc. Indem. Corp. v. Aetna Cas. & Sur. Co.*, 89 N.Y.2d 214, 652 N.Y.S.2d 584 (1996) | 5 |
| *Prestandrea v. Stein*, 262 A.D.2d 621, 692 N.Y.S.2d 689 (2d Dept. 1999) | 11 |
| *Rattner v. York*, 174 A.D.2d 718, 571 N.Y.S.2d 762 (2d Dept. 1991) | 7, 12 |

| State Statutes | Page |
|---|---|
| N.Y. Civ. Prac. Law § 203(f) (2008) | 6 |
| N.Y. Civ. Prac. Law § 213(1), (7), (8) (2008) | 4, 6 |
| N.Y. Bus. Corp. Law § 624 (b) (2008) | 10 |

PRELIMINARY STATEMENT

Defendants Lorna Brody ("Lorna"), Evelyn Brody ("Evelyn"), and 466 Broome Street of New York City, Inc. (the "Company") (collectively the "Defendants"), by their attorneys Rand Rosenzweig Radley & Gordon LLP, respectfully submit this memorandum of law for an Order dismissing the Complaint of Richard Brody ("Richard"), dated September 11, 2007 ("Complaint"), upon the grounds that the applicable statue of limitations has run on each of plaintiff's causes of actions for fraudulent inducement, fraud, breach of fiduciary duty, corporate waste and unjust enrichment in the Complaint. (Complaint at ¶¶ 27, 41-64).

NATURE OF THE ACTION

For purposes of this motion to dismiss, the facts recited in the Complaint, or in its Exhibits, are to be accepted as true and are summarized here. The Company is a closely-held family corporation, which owned a five-story industrial building with approximately 30,000 square feet of rentable space at 466 Broome Street, New York, N.Y. (the "Property") in the Soho section of Manhattan, until the sale of the Property in spring 2007. (*Id.* at ¶¶ 1, 17, 37 and Exhibit D at ¶ 2). Plaintiff is the brother of both Lorna and defendant Robert Brody ("Robert"),[1] and the son of Evelyn. (*Id.* at ¶ 13). Leo Brody, the father of Richard, Lorna and Robert, died in 1988, leaving his widow, Evelyn, as the life beneficiary of the Trust created under the Will of Leo Brody (the "Trust"). After Leo's death, the sole shareholders of the Company were Richard, Robert, Lorna and the Trust. (*Id.* at ¶¶ 36, 38). The gravamen of this action is Richard's September 1995 sale of his approximately one-quarter shareholding interest in the Company for one dollar.

---

[1] Robert is represented by different counsel and is not referred to herein when Defendants are referenced.

1

Plaintiff alleges in the Complaint that between 1993 and 1995, Evelyn told Richard on several occasions that the Company was in financial difficulty and near bankruptcy. (*Id.* at ¶¶ 20-22, 24). According to the Complaint, as a result of the Company's financial problems, Evelyn repeatedly demanded cash contributions from Richard on short notice to cover tax, mortgage or other payments due to the Company's cash shortfall. (*Id.* at ¶¶ 20-24). Richard further alleges that over this period he paid sums of approximately $44,000 to the Company to cover the alleged capital calls communicated by Evelyn, liquidating most of his personal savings.[2] (*Id.* at ¶¶ 20-23, 25). From the Complaint, it appears that Richard was distressed by these frequent demands for monetary bail-outs over the two year period. (*Id.* at ¶¶ 20-25). Upon his objection to the repeated calls for money, Evelyn allegedly offered to have the Company buy back Richard's shares for one dollar. Richard claims that Evelyn dictated the wording of his September 12, 1995 letter, by which he announced his intention to divest himself of his shares by offering them to the Company for $1.00. (*Id.* at ¶¶ 26-27 and Exhibit A). The Company and Richard memorialized the sale of Richard's shares to the Company in a letter dated September 29, 1995. (*Id.* at ¶ 28 and Exhibit B).[3] Thereafter, on unspecified occasions and dates, Evelyn is alleged to have advised Richard that the Company was still in financial difficulty. (*Id.* at ¶ 30).

Significantly, considering that Richard brings three fraud related causes of action, the Complaint fails to assert that Evelyn's alleged pre and post-sale statements to Richard regarding the Company's financial difficulties were in fact false. Moreover, nowhere does the Complaint assert that the Company did not have actual cash shortfalls, or that capital

---

[2] The Complaint contains no evidentiary support or detail underlying the allegations that Richard personally contributed funds to the Company to cover shortfalls.

[3] The Complaint at ¶ 28 incorrectly dates the letter attached as Exhibit B to the Complaint as "September 29, 2005." The date of the letter attached as Exhibit B is "September 29, 1995."

2

contributions were not legitimately needed on occasion for the purposes his mother indicated to him. Additionally, while the introduction to the Complaint summarily states that Defendants misrepresented the "value" of the Company to Richard when he sold his shares (*id.* at ¶ 4), no detail is given of what value was stated. Moreover, the Complaint does not state that Evelyn asserted the value of his shareholding interest to be $1.00. Therefore, evidently, Richard well knew that his shares had a value greater than $1.00. Finally, although claims of fraud and otherwise are asserted against the other defendants, the Complaint does not allege that anyone other than Evelyn made any statements regarding the Company's financial condition to Richard or that she make them on behalf of anyone but herself.

Not only are Evelyn's statements not alleged to be false, but as presented by the Complaint, her statement concerned only the cash flow of the Company, not its value. Value and cash needs are obviously distinct issues, especially where, as here, real estate is the primary asset. Thus, Richard's current position appears to be that the fraud perpetrated by Defendants was their mere omission (i) to tell him that the real value of his shares in 1995 was in excess of $1.00 and (ii) to advise him that their leases to UFO and Robert were allegedly at below market rents. According to Richard, these omissions led him to sell his shares for a nominal value.[4] (*Id.* at ¶ 4). Richard contends that he was not aware of this fraud until late 2006 when Robert informed Richard of his judicial dissolution proceeding against the Company. (*Id.* at ¶¶ 4, 30-33 and Exhibit D). The petition in Robert's action demanded the sale of the building and estimated its value at $15 million or more. (Complaint Exhibit D at ¶ 3).

---

[4] We bring to the Court's attention that the leases referenced in the Complaint are all post-1995, and as such do not reflect or bear on the rents charged while Richard was a shareholder in the Company. *See id.* at ¶ 34 and Exhibits I and J to Complaint Exhibit D.

3

In spring 2007, after stipulated dismissal of the judicial dissolution proceeding, the Company sold the Property for $19.5 million. (*Id.* at ¶ 35). As Richard attests in his Complaint, upon learning of this sale, he "complained to his mother, Evelyn, regarding the Corporation taxes that he had paid between 1993 and 1995." (*Id.*). Thereafter, Evelyn indicated her intention of gifting $1 million of her share of the sale proceeds to Richard, until she discovered that she did not own any shares outright, as her entire interest in the Company was through the Trust. (*Id.* at ¶ 36 and Exhibits E-F). Nine months later, Richard commenced this action, twelve years after he sold his shares back to the Company.

## ARGUMENT

### POINT I

### THE STATUTE OF LIMITATIONS HAS RUN ON EACH CLAIM BROUGHT AGAINST DEFENDANTS

The statute of limitations has run on each of Plaintiff's five causes of action alleged against the Defendants, as a matter of law. *See Golden Pacific Bancorp v. FDIC*, 273 F.3d 509, 515 (2d Cir. 2001) ("application of the statute of limitations is an issue of law"); *Klein v. Bower*, 421 F.2d 338, 344 (2d Cir. 1970) ("accepting appellant's factual assertions as true, he cannot escape statutory bar"). In New York, the statute of limitations is at most six years for claims of fraudulent inducement, fraud, breach of fiduciary duty, corporate waste and unjust enrichment as pled by plaintiff. *See* N.Y. Civ. Prac. Law §§ 213(1), (7), (8) (2008); *Armstrong v. McAlpin*, 699 F.2d 79, 87 (2d Cir. 1983) (dismissing as time barred fraud allegations commenced over six years after occurrence); *Malmsteen v. Berdon, LLP*, 477 F. Supp. 2d 655, 666-67 (S.D.N.Y. 2007) (in *dicta*, six year limitations period applies to breach of fiduciary claims

4

premised on actual fraud, as well as unjust enrichment claim connected to fraud allegations); *Von Hoffman v. Prudential Ins. Co.*, 202 F. Supp. 2d 252, 262 (S.D.N.Y. 2002) (fraud in the inducement claim limited to six years); *Golden Pacific*, 273 F.3d at 518 (citing *Blake v. Blake*, 252 A.D.2d 337, 638 N.Y.S.2d 632 (1st Dept. 1996) for its holding that shareholder derivative actions for corporate waste are subject to six year statute of limitations).

The accrual date for statute of limitations' purposes runs from the date when plaintiff first became entitled to maintain an action. *See Global Financial Corp. v. Triarc Corp.*, 93 N.Y.2d 525, 528, 693 N.Y.S.2d 479, 484 (1999). "In other words, a 'cause of action accrues, for purposes of measuring the period of limitations, when all the facts necessary to the cause of action have occurred so that the party would be entitled to obtain relief in court.'" *Lord Day Lord v. Socialist Republic of Vietnam*, 134 F. Supp. 2d 549, 561-62 (S.D.N.Y. 2001) (quoting *Motor Vehicle Acc. Indem. Corp. v. Aetna Cas. & Sur. Co.*, 89 N.Y.2d 214, 652 N.Y.S.2d 584 (1996) in granting motion to dismiss as time barred under New York law).

The statute of limitations for most of Richard's causes of action started to run from the period when Evelyn allegedly first demanded money for the Company's taxes and other expenses commencing in "approximately January or February 1993" (Complaint at ¶ 20), which would be the period when Richard first had the basis for an action against the Defendants on grounds of fraud, breach of fiduciary duty, corporate waste and unjust enrichment. *See Fandy Corp. v. Lung-Fong Chen*, 262 A.D.2d 352, 691 N.Y.S.2d 572 (2d Dept. 1999) (fraud accrues on date of first misrepresentation); *In re Piccillo*, 19 A.D.2d 1087, 797 N.Y.S.2d 236 (4th Dept. 2005) (breach of fiduciary duty accrues at time of alleged wrongful conduct); *Congregation Yetev Lev D'Satmar, Inc. v. 26 Adar N.B. Corp.*, 192 A.D.2d 501, 503, 596 N.Y.S.2d 435, 437 (2d Dept. 1993) (dismissing unjust enrichment claim brought 12 years after accrual date as time

5

barred); *Blake*, 252 A.D.2d at 337, 638 N.Y.S.2d at 632 (shareholder derivative action for corporate waste dismissed as time barred). The fraudulent inducement claim accrued on September 29, 1995, the date Richard sold his shares to the Company for one U.S. dollar. *See Von Hoffman*, 202 F. Supp. 2d at 262 (fraudulent inducement claim dismissed). Obviously six years from any date between January 1993 and September 29, 1995 has long passed. As the Complaint presents no explanation or justification for the delay in commencing this action, each of plaintiff's causes of action is time barred and the Complaint *in toto* should be dismissed.

POINT II

FRAUD CAUSES OF ACTION ARE
NOT TOLLED BY NEW YORK'S
TWO-YEAR DISCOVERY RULE

The New York statute applies an alternative two-year statute of limitations to fraud claims and permits such an action to commence more than six years after the accrual date if brought within "two years from the time the plaintiff . . . discovered the fraud or *could with reasonable diligence* have discovered it." *See* N.Y. Civ. Prac. Law §§ 203(f), 213(8) (2008) (emphasis supplied). The test for when fraud should with reasonable diligence have been discovered is an objective one. *Armstrong v. McAlpin*, 699 F.2d 79, 88 (2d Cir. 1983) (applying New York state statute of limitations to dismiss fraud claims under federal securities law). The application of the "reasonable diligence" test has been explained by the New York Court of Appeals as:

> . . . where the circumstances are such as to suggest to a person of ordinary intelligence the probability that he has been defrauded, a duty of inquiry arises, and if he omits that inquiry when it would have developed the truth, and shuts his eyes to the facts which call for investigation, knowledge of the fraud will be imputed to him.

6

*Higgins v. Course*, 147 N.Y. 411, 416, 42 N.E. 6, 7 (1895). Or as more succinctly put by the Supreme Court, "the means of knowledge are the same thing in effect as knowledge itself." *Wood v. Carpenter*, 101 U.S. 135, 143, 25 L.Ed. 807 (1879). *See also Dodds v. Cigna Securities, Inc.*, 12 F.3d 346, 350 (2d Cir. 1993) (referencing *Wood* to find plaintiff failed to meet reasonable diligence test), *cert. denied*, 511 U.S. 1019, 114 S.Ct. 1401, 128 L.Ed.2d 74 (1994); *Armstrong*, 699 F.2d at 88 (same).

A.  As a Matter of Law, Plaintiff Cannot Meet the Burden
    of Establishing Entitlement to the Two-Year Discovery Rule.

As stated above, the issue of statute of limitations is for the court to decide and is normally decided at the outset of a case, absent proof of a genuine issue of fact. *Dodds*, 12 F.3d at 350 (disagreeing with plaintiff and holding discovery rule application may be resolved as a matter of law against her); *Old Republic Insurance Co. v. Hansa World Cargo Service, Inc.*, 51 F. Supp. 2d 457, 468-470 (S.D.N.Y. 1999) (dismissing breach of fiduciary duty claim as time barred under discovery rule as "no factual question exists"). Thus, the resolution of the two-year discovery rule on a motion to dismiss is appropriate, where the facts needed to determine when a plaintiff would be aware of the fraud with reasonable diligence can be found in the Complaint and papers before the court. *Foxley v. Sotheby's Inc.*, 893 F. Supp. 1224, 1231 (S.D.N.Y. 1995) (relying on *Dodds*, 12 F.3d at 352). This Court, in *Foxley*, specifically rejected the plaintiff's contention that the application of the statute of limitations is "a mixed question of law and fact" and thus never ripe for a motion to dismiss. *Id.* at n.7. Instead, the Court held that plaintiff's inaction could be "gleaned from the complaint" and thus barred his action for fraud. *Id.*; *see also Rattner v. York*, 174 A.D.2d 718, 721, 571 N.Y.S.2d 762, 765 (2d Dept. 1991) ("a complaint should be dismissed upon a motion where it conclusively appears that the plaintiff has knowledge of facts which should have caused her to inquire and discover the alleged fraud").

7

The burden is on the plaintiff to show that he is entitled to the two-year discovery rule. *Guilbert v. Gardner*, 480 F.3d 140, 147 (2d Cir. 2007); *Grasso v. Grasso*, 45 A.D.3d 1022, 845 N.Y.S.2d 182, 183 (3d Dept. 2007). This burden requires a showing by plaintiff that "the fraud could not have been discovered before the two-year period prior to the commencement of the action." *Guilbert*, 480 F.3d at 147. In *Guilbert*, the Second Circuit held that plaintiff had not met this burden and could not take advantage of the two-year discovery rule because plaintiff never inquired of his employer why the paperwork for his promised pension plan had not been provided despite "suspicious" lack of response to plaintiff's repeated requests. *Id.* at 147-48 (decision on summary judgment although essentially decided on plaintiff's allegations and not extrinsic evidence). Thus, numerous federal and state courts have held as a matter of law that the plaintiff has failed to meet the burden of establishing application of the two-year discovery toll where the plaintiff failed to inquire in the face of information that puts a person of "ordinary intelligence" on notice of such a duty. *See Armstrong*, 699 F.2d at 88; *Grasso,* 45 A.D.3d at 1022, 845 N.Y.S.2d at 183.

It appears on the face of the Complaint that Richard was distressed by his mother's short notice demands for money starting in "approximately January or February 1993" and continuing for the next two and one-half years until he sold his interest in the Company in September 1995. (Complaint at ¶¶ 20-25, 28). He claims he "liquidated most of his savings . . . [to] bail out the Corporation . . . ." (*Id.* at ¶ 25). Under New York law, this situation is sufficient to put a person of ordinary intelligence on notice of inquiry with reasonable diligence as to the accuracy of the demands made by his mother, the need for his compliance with the capital calls and the true "value" of his interest in the Company. *See Foxley*, 893 F.Supp. at 1231 (plaintiff failed to obtain the promised letter or to learn the well-known fact that credibility of expert was

8

questionable); *Georgiou v. Panayia of the Mountains Greek Orthodox Monastery, Inc.*, 16 A.D.3d 998, 999-1000, 792 N.Y.S.2d 667, 669 (3d Dept. 2005) ("denial of access to property via an instrument they assert bears forged signatures was sufficient to place plaintiffs on notice that something was amiss with the underlying transaction and further investigation was warranted"). Therefore, Richard had sufficient notice that inquiry was required and he failed to take any such action.

B.      Plaintiff's Inaction Precludes Application of Discovery Rule to His Fraud Claims.

Where the plaintiff makes no effort to ascertain the facts underlying his belated fraud claims, the courts have dismissed the action as time barred. *See Satterwhite v. The Image Bank, Inc.*, 48 U.C.C. Rep. Serv.2d 1307, 2002 WL 31098496 *2 (S.D.N.Y.); *In re Blake*, 282 A.D.2d 905, 723 N.Y.S.2d 563 (3rd Dept. 2001); *Garlick v. Tarenzi*, 152 A.D.2d 721, 544 N.Y.S.2d 176 (2d Dept. 1989). Such a result makes sense, as the courts refuse to reward a plaintiff that "shuts his eyes to the facts that call for investigation" and instead impute knowledge of the fraud to him as of the date he could with reasonable diligence been discovered it. *Higgins*, 147 N.Y. at 416; *City of New York v. Eisen*, 226 A.D.2d 244, 641 N.Y.S.2d 257, 258 (1st Dept. 1996).

Here, despite the information readily accessible to him, Richard shut his eyes to the facts that called for investigation, until twelve-plus years (double the applicable statute) had elapsed. In the 1993-95 period, Richard must have known, or could easily have learned from a real estate broker, the value of a 30,000 square foot building in Soho, and that it was vastly more than a few dollars, whatever the current cash flow. Similarly, if dissatisfied, as he now claims, with the then current cash flow or profits of the Company, he could easily have called a broker to learn market rents and ascertained whether the Company was obtaining them from related

9

tenants such as UFO. After all, he knew then that UFO was the prime tenant and that it was owned and operated by the defendants. (Complaint at ¶ 4). Surely, therefore, if he was, as he claims, unhappy with the Company's performance and knew that the prime tenant was a related party, he must be charged with investigating whether the related company rents were properly set.

By claiming that he first learned of purported undercharges of rent from Robert in November 2006 (Complaint at ¶ 32),[5] Richard admits that he utterly and continually failed to investigate the statements and omissions underlying his claims of fraud. As the Second Circuit declared, the courts will not await the plaintiff's "leisurely discovery of the full details of the alleged scheme." *Klein*, 421 F.2d at 343 (citing *Talmadge v. United States Shipping Board*, 54 F.2d 240, 243 (2d Cir. 1931) (L. Hand, J.)); *Grasso*, 45 A.D.2d at 1022, 845 N.Y.S.2d at 183 (in affirming dismissal of fraud action as time barred, held it would have been reasonable to determine the value of items at time of receipt).

The Complaint does not recite any effort by Richard to review the Company's records while a shareholder, including those documents which would certainly have revealed the rental income received by the Company. Thus, if K-1's or other tax records given a shareholder, such as Richard, in real estate corporations were insufficient to assess gross rental income, Richard had the absolute right under the New York Business Corporation Law to review the books and records of the Company. *See* N.Y. Bus. Corp. Law § 624(b) (2008). Had he taken this easy step, he would have become aware of the rents charged by the Company for its Property and be able to calculate the average rent per square foot for comparison purposes. This he did

---

[5] Notwithstanding, the Defendants do not allow that Robert's claim was meritorious.

10

not do.[6]  *See, e.g., Armstrong*, 699 F.2d at 88 (prospectuses in plaintiff's possession held sufficient to put on notice of exercising reasonable diligence); *Satterwhite*, 48 U.C.C. Rep. Serv. 1307 (fraud claim dismissed as time barred where plaintiff took no action for 17 years although documents demonstrating fraud were in his possession for this period); *Prestandrea v. Stein*, 262 A.D.2d 621, 692 N.Y.S.2d 689 (2d Dept. 1999) (fraud action time barred as tax returns and other documents in plaintiff's possession).

Furthermore, the "market rate" for rentals of industrial space in Manhattan is hardly a secret and is as much available today as it was in 1995 to any person who contacts a New York City realtor or researches local publications. *See, e.g., Old Republic Insurance Co.,* 51 F. Supp. 2d at 469-70 (fraud claim dismissed as time barred under discovery rule where court found information was available but plaintiff took no prior action); *Board of Managers of Society Hill II v. K. Hovnanian Companies of New York, Inc.*, 271 A.D.2d 388, 389, 705 N.Y.S.2d 633 (2d Dept. 2000) (same).  Since the information was available to him within six years after the accrual date of his claims, Richard cannot excuse his failure to timely discover the allegedly fraudulent misrepresentations and omissions, as required by law to take advantage of the two-year discovery rule. *See Radin v. Albert Einstein College of Medicine of Yeshiva University*, 2005 WL 1214281 (S.D.N.Y.) (perfunctory dismissal of fraud claims, where the plaintiff had no explanation or justification for the failure to investigate); *Georgiou*, 16 A.D.3d 998, 792 N.Y.S.2d 667 (same); *In re Blake*, 282 A.D.2d 906, 723 N.Y.S.2d 563 (same).

The Second Department's decision in *Rattner*, 174 A.D.2d 718, 571 N.Y.S.2d 762, upholding the dismissal of plaintiff's fraud cause of action is apropos to the case at bar.  In

---

[6] Robert appeared to have no problem accessing the Company's leases and similar information while he was a shareholder.  (*See* Complaint Exhibit D).

11

*Rattner*, the sister of the defendants sued her brothers for actions sounding in fraud for inducing her to sign an agreement that they purportedly represented at the time would authorize the immediate sale of her deceased father's businesses and "make her a rich woman." *Id.* at 719, 571 N.Y.S.2d at 763. When twenty years later one of the businesses was sold and plaintiff demanded her share of the sale, plaintiff was informed that by the agreement she had granted all her rights to the businesses to her brothers in exchange for their payment of weekly sums to the mother. Plaintiff sued and the court dismissed the claims as time barred, because "[i]n the period of 20 years after Rattner signed a document she alleges she believed was to facilitate the sale of the corporations, *she never made any inquiries about the alleged sale*, even though she admittedly knew that her brothers did not sell the corporation." *Id.* at 721, 571 N.Y.S.2d at 765 (emphasis supplied). Thus the court concluded that she could have discovered the alleged fraud more than two years prior to the commencement of her action if she had "exercised due diligence." *Id.* The same can be said for Richard, if he had exercised due diligence, he could have discovered the alleged fraud more than two years prior to the commencement of his action against his family.

Plaintiff cannot meet the objective test of the discovery rule to obtain the advantage of its two year tolling of the statute of limitations. Under this test, he had a duty of inquiry with regard to the purported fraud. Therefore, Richard's inaction is not excused and must doom any effort to apply the two-year discovery rule exception to the statute of limitations to his fraud claims.

## CONCLUSION

Defendants respectfully request dismissal of all claims asserted against them on the grounds that the statute of limitations has run and cannot be tolled for each claim.

Dated: White Plains, New York
      January 31, 2008

                                RAND ROSENZWEIG RADLEY
                                & GORDON, LLP


                                By: _____/S/_____
                                Charles L. Rosenzweig (CR7622)
                                Catherine S. Campbell  (CC3497)
                                *Attorneys for Defendants*
                                    *Lorna Brody, Evelyn Brody and 466*
                                    *Broome Street of New York City, Inc.*
                                50 Main Street, 12th Floor
                                White Plains, N.Y. 10606
                                914-406-7000