**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x

RICHARD BRODY,                       :

                                          :      07 CV 7981 (RJS)
                           Plaintiff,   :
                                          :

                   v.                   :
                                          :

LORNA BRODY, ROBERT BRODY,     :
EVELYN BRODY, and 466 BROOME     :
STREET OF NEW YORK CITY, INC.,    :
                                          :
                         Defendants.   :
-----------------------------------------------------------x

REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

                                                RAND ROSENZWEIG RADLEY
                                                & GORDON, LLP
                                                Attorneys for Defendants
                                                 Lorna Brody, Evelyn Brody and 466
                                                 Broome Street of New York City, Inc.
                                                50 Main Street, 12th Floor
                                                White Plains, N.Y. 10606

<u>PRELIMINARY STATEMENT</u>

Defendants Lorna Brody ("Lorna"), Evelyn Brody ("Evelyn"), and 466 Broome Street of New York City, Inc. (the "Corporation") (collectively the "Defendants"), by their attorneys Rand Rosenzweig Radley & Gordon LLP, respectfully submit this reply memorandum of law for an Order dismissing the Complaint of Richard Brody ("Richard"), dated September 11, 2007 ("Complaint").

Defendants take exception to plaintiff's insinuations that the Defendants admitted in their papers that the statements or actions imputed to the Defendants were in fact false representations. Instead, as required, Defendants only accepted plaintiff's version of the facts for the limited purpose of arguing this motion to dismiss. In fact, as discussed further herein, Defendants contend that plaintiff's version of the facts, as stated in the Complaint and argued in the opposition brief, is inherently unbelievable.

<u>ARGUMENT</u>

POINT I

THE STATUTE OF LIMITATIONS
HAS RUN ON EACH CLAIM
<u>BROUGHT AGAINST DEFENDANTS</u>

Plaintiff necessarily concedes that six years have run since each of five causes of action alleged against the Defendants for fraudulent inducement, fraud, breach of fiduciary duty, unjust enrichment and corporate waste first accrued. He does not dispute that he sold his shares back to the Corporation in September 1995, and that he commenced his action based on that sale

1

in September 2007, twelve years after the date of sale. Therefore, absent tolling, normal application of New York's six-year statute of limitations bars plaintiff's claims.

In an effort to escape application of the statute of limitations, plaintiff now asserts in his opposition papers that his claim of unjust enrichment is two-fold, one occurring at the time he sold his shares in 1995 and the other when the Corporation sold its sole asset, a building in the Soho neighborhood of Manhattan in 2007 for $19 million. (Pl. Br. at 10). However, plaintiff's contention that he has a 2007 claim for unjust enrichment is frivolous. Unjust enrichment claims accrue "upon the occurrence of the wrongful act giving rise to a duty of restitution." See Elliott v. Qwest Communications Corp., 25 A.D.3d 897, 898, 808 N.Y.S.2d 443, 445 (3d Dept. 2006) (unjust enrichment claim barred because claim accrued in 1995 when plaintiff wired money for stock purchase, not in 2002 when defendant rejected plaintiff's demand for refund). Under plaintiff's recitation of the facts, Defendants obtained plaintiff's shares in the Corporation in 1995. Any benefit to Defendants from those shares at a later date does not give rise to a new cause of action; for if it did, then so long as any defendant remained with any property, a plaintiff could forever commence an action to recover its benefit.

Plaintiff's citation to Golden Pacific Bancorp v. FDIC, 272 F.3d 509 (2d Cir. 2001), is inapposite. In that case, the court found that the wrongful act giving rise to restitution was the receiver's act of paying itself from plaintiff's funds, and as such the claim arose on the first date the receiver paid itself from the interest earned on plaintiff's funds it was holding. Id. at 520. Surprisingly, plaintiff emphasizes the salient sentence from that section of the opinion, which states that before paying itself "the FDIC had neither enriched nor possessed any of Bancorp's 'money or property.'" Id. Here, in contrast, Richard specifically claims that the Corporation allegedly obtained his shares unjustly in September 1995. At that point, defendants

2

allegedly possessed plaintiff's money and property.  Any further action taken by the defendants with regard to this money or property does not state a second claim.  See AmBAse Corp. v. City Investing Co. Liquidating Trust, 2002 WL 59431 (S.D.N.Y.) ("[n]o fresh breach or 'wrongful act giving rise to a duty of restitution' occurred").

Finally, an unjust enrichment claim that is merely incidental to or duplicative of another claim must adhere to the statute of limitations period for the primary cause of action.  Malmsteen v. Berdon, LLP, 477 F.Supp. 2d 655, 667 (S.D.N.Y. 2007).   Since Richard's unjust enrichment claim is based on his claims of fraudulent inducement, it gets no extension of time beyond any afforded to his primary claim.  See id.  Dismissal of the fraud claims based on the statute of limitations, therefore necessitates dismissal of the unjust enrichment claim as well.

POINT II

PLAINTIFF'S INACTION PRECLUDES
APPLICATION OF TWO-YEAR
DISCOVERY RULE TO HIS FRAUD CLAIMS

Plaintiff argues that the two-year discovery rule tolls his claims for fraud, fraudulent inducement and breach of fiduciary duty until 2006 when he allegedly discovered the fraud perpetrated by Defendants.  To state a claim for fraud, a plaintiff must allege a misrepresentation was made and relied upon.  Any plaintiff, including Richard, must necessarily discover the fraud at a date subsequent to the fraud, or the fraud would have never been relied upon and consummated.  For statute of limitations purposes, the accrual date for fraud claims starts when the alleged false statement was communicated to plaintiff, not from the date of discovery, unless plaintiff can show the fraud could not have been discovered within the six year statute of limitations.  Fandy Corp. v. Lung-Fong Chen, 262 A.D.2d 352, 691 N.Y.S.2d 572 (2d

3

Dept. 1999). In this event, plaintiff has two years to bring the action from either the date of actual discovery or when plaintiff, with reasonable diligence, could have discovered the fraud. N.Y. Civ. Proc. Law § 213(8) (2008).

Although not specified in the Complaint, Richard argues in his opposition papers that the fraud on him is the Defendants' representation to him in 1995 that his shares in the Corporation were worth only $1. (See Plaintiff's Memorandum of Law in Opposition to Motion to Dismiss at 3). He does not contend that this alleged representation was an outright statement by the Defendants, but rather that it was implied by their actions in accepting his offer to sell his shares to the Corporation for $1. According to Richard, such acceptance indicated to him that this was the full value of his shares. (Id.) He further argues that the Defendants had a duty to explain to him that his 13.333 shares (or over 26% interest[1]) in a company that owned a valuable parcel in Manhattan in 1995 were worth more than $1. (Id.) Richard does not cite to any cases to support the proposition that the Defendants had a duty to explain to him that his more than 26% interest in a 30,000 square foot industrial building located in Soho was worth more than $1, regardless of the company's current cash flow.

While arguing that Defendants had the duty to inform plaintiff of this self-evident fact, Richard contends in his opposition papers he himself had no duty to inquire as to value of the underlying property or his shares. However, for over 100 years, the New York courts have imposed just that duty on plaintiffs. See Armstrong v. McAlpin, 699 F.2d 79, 88 (2d Cir. 1983) (citing Higgins v. Course, 147 N.Y. 411, 416, 42 N.E. 6, 7 (1895)). Any plaintiff taking advantage of the two-year discovery exception to the fraud statute of limitations must show some

---

[1] Richard incorrectly surmises in his opposition papers that his 13.333 shares in the Corporation were equal to a 13.333% interest in the company. However, only 50 shares were ever issued by the Corporation, and thus Richard's shares equaled an over 26% interest.

4

reasonable diligence in inquiring "where the circumstances are such as to suggest to a person of ordinary intelligence the probability that he has been defrauded, a duty of inquiry arises, and if he omits that inquiry when it would have developed the truth, . . . knowledge of the fraud will be imputed to him." Higgins, 147 N.Y. at 416, 42 N.E. at 7.

Plaintiff acknowledges that New York applies an ordinary person standard. An ordinary person in Richard's position is required to act with reasonable diligence to determine the veracity of the alleged misrepresentation. See Dodds v. Cigna Securities, Inc., 12 F.3d 346 (2d Cir. 1993); Rattner v. York, 174 A.D.2d 718, 721, 571 N.Y.S.2d 762, 765 (2d Dept. 1991). Plaintiff cites no authority for the proposition that his residence in Boston, employment in the radio industry, estrangement from his family and non-involvement in his family business would render him immune from the requirement imposed on ordinary persons to use reasonable diligence to determine the veracity of the alleged misrepresentation. Richard utterly fails to show how his residence, employment and estrangement from his family prevented him from making a reasonable effort to ascertain the worth of his more than a quarter shareholding interest in a corporation owning a substantial parcel of real property. As Richard concedes, he did not make any such effort, with reasonable diligence or otherwise. He did nothing.

Equally preposterous is Richard's statement that he did not have the means to inquire as to the value of his shares in the Corporation. It costs no more than a telephone call or internet inquiry to ask a realtor in New York City for the market rents or sale price by square foot of an industrial building in Soho. It also would only have required a telephone call to his family to request the company's annual financial report, a demand he had the right to make as a shareholder in the Corporation. See N.Y. Bus. Corp. L. § 624. Moreover, Richard admits that he spoke weekly with his mother and in each conversation his mother discussed the allegedly sad

5

state of the Corporation's business. It would seem that an ordinary person would ask his mother about the value of the company or even the value of his shares at some point during these many conversations.[2] In fact, Richard had over two weeks from the time he sent the letter offering to sell his shares and Lorna's letter accepting the offer. (Compare letter dated September 12, 1995 attached as Ex. A to Complaint with letter dated September 29, 1995 attached as Ex. B to Complaint). At no time during those two weeks did he allege that he asked his mother or anyone else for the company's annual financial report, an appraisal of the real estate, market rents, current leases or any other information that a person of ordinary prudence would have requested. None of these inquiries would have required much money or effort to accomplish, but again as Richard admits, he did none of them.

Richard also contends that his mother, defendant Evelyn, misled him by telling him on a weekly basis over a fourteen year period (from 1993-2007), that the Corporation was doing terribly and on the brink of bankruptcy. These allegations do not make sense. The Corporation's sole asset was a real estate holding which had long-term leases and long-term expenses. (See Complaint at ¶¶ 4, 34 and Ex. D). Real estate companies do not suffer the weekly or monthly vagaries of an operating company with cash flow issues. A more likely explanation for Evelyn's allegedly weekly statements is that she was referring to the Brody family's operating business, UFO Contemporary Inc. ("UFO"), which operates a wholesale apparel company and has suffered over the years from cash flow crunches. However, taking as true, for purposes of this motion only, Richard's complaint that Evelyn misstated the condition of

---

[2] There is a substantial difference, especially in a real estate company, between a company's cash flow and its value. The Corporation's alleged needs in the 1993-95 period for cash infusions to address cash flow shortfalls, do not lead to any conclusion about the net worth of the Corporation.

6

the Corporation (the company holding the real estate asset), why then if Richard continually heard week after week, month after month, that it was tottering on the brink of collapse, but one year later, then two years later and so on through year six, he never heard that it had filed for bankruptcy or was otherwise terminated, was he not suspicious and placed on notice to investigate whether his mother's statements were in fact false, as he now claims?  The statute requires reasonable diligence to inquire as to the truth of the statements if an ordinary person would have his suspicions aroused. See Dodds, 12 F.3d at 350.  An ordinary person in Richard's situation would find such a situation suspicious after less than six years of such constant communication of doom and gloom about the Corporation, and would have made inquiries.

Plaintiff argues he had no duty to inquire because he had no documents in his possession that would have shown the fraud.  However, the legal standard for the duty of inquiry under the two-year discovery rule is <u>not</u> whether plaintiff had documents or information in his possession that would show him the fraud, but rather whether the circumstances would give rise to suspicions in a person of ordinary intelligence  triggering the duty to investigate with reasonable diligence.  Furthermore, plaintiff cites to only one case, Higgins v. Course, 147 N.Y. 411, 42 N.E. 6 (1895), to support his new reading of the case law, while ignoring a hundred years of subsequent authority.   See, e.g.,  Armstrong v. McAlpin, 699 F.2d at 88; Grasso v. Grasso, 45 A.D.3d 1022, 845 N.Y.S.2d 182, 183 (3d Dept. 2007).

Notably Higgins is the case that developed the duty of inquiry rule, as quoted above, although the then applicable fraud statute of limitations, unlike the current one, did not impose such a requirement.  Higgins, 147 N.Y. at 414, 42 N.E. at 6.  Nonetheless, the outcome in Higgins does not support Richard's claim because the court there concluded that the plaintiff would not have discovered the fraud, even upon inquiry, because the only source was private

7

tests in defendant's possession. Id.   In contrast to Higgins, Richard was not impeded from discovering the true facts. The value of real estate in New York is well-known throughout the nation, including in Boston.  It would not take much time or money to learn from publicly available sources the actual value of the Corporation's real estate parcel in 1995, and at any time over the six years following his sale of the shares.   Richard did not need to hire professional financial advisors to determine that his 26% interest was worth more than $1, as he now claims. Richard could have contacted a New York realtor, researched public information such as the New York Times or industry publications found at any public library, or even have asked his mother on his weekly telephone calls.  Additionally, Richard as a shareholder in the Corporation, a New York S-corporation, received annual K-1 forms for his tax filings through 1995.  Thus, Richard did have documents in his possession regarding the Corporations' financial condition and easily could have obtained additional information from public sources, but Richard did nothing, as he freely admits.

       The more likely version of the facts is that Richard did not inquire as to the true worth of his shares or the underlying property because he knew that the sale of his shares to the Corporation was not a result of any fraud or misrepresentation on the part of his family.  He admits that by the time of the sale, he had already removed himself from the family's operating business, UFO, and moved out of state to work in a different industry.  Already estranged from his family, Richard's sale of his shares was motivated by his own wish to be relieved of any remaining connection to them.  He sold his shares in the Corporation for the nominal price of $1, not because he was misled by the defendants, but to sever this remaining tie to his family.

## CONCLUSION

As the Complaint presents no explanation or justification for the delay in commencing this action, each of plaintiff's causes of action is time barred and the Complaint in toto should be dismissed.

Dated: White Plains, New York
       March 17, 2008

                                    RAND ROSENZWEIG RADLEY
                                    & GORDON, LLP


By: _____/S/_____
Charles L. Rosenzweig (CR7622)
Catherine S. Campbell  (CC3497)
Attorneys for Defendants
    Lorna Brody, Evelyn Brody and 466
    Broome Street of New York City, Inc.
50 Main Street, 12th Floor
White Plains, N.Y. 10606
914-406-7000